OPINION of the Comí;,by
Judge Owsiet,
At the. September term 1812, of the Lewis circuit court, Fowler recovered judgment for lands of which Halbert was then possessed, in-an action of ejectment which had been commenced in June 1811. During the same term, on the niotioii of Halbert, commissioners were appointed to va. lue the improvements, &c. according to the act of assembly which passed the 31st of January 1812. The com-rn*ss'onB,'s accordingly met upon the land, and after valuing the improvements, &c. made report substantially in pursuance of the requisitions of the act under which they w<?re appointed. Upon the report being returned to court, various exceptions were taken to it by the counsel of Fowler; hut the circuit court being of opinion they were unavailing, and Fowler having failed to execute bonds for the payment of the value of the improv e, ments, &c. according to law, and having also failed to elect to take the value of his land, although time was given for him to do so, and upon that failure Halbert having elected to take a judgment for the value of his improvements, that court awarded judgment in favor of Halbert for the amount reported in his favor. From this judgment Fowler has appealed to this court,
The various assignments of error do not only question the regularity of the proceedings of the commissioners, according to the act of 1812, but also deny Halbert’s right to have his improvements valued under that act. We will therefore, without a more precise specification of the errors assigned, proceed to dispose of such points as are deemed necessary, in the order they occur.
It is contended the commissioners improperly proceeded to the performance of the duty assigned them, without personal notice of their time of meeting having been pre-, vjousiy given to Fowler.
*53 It would certainly have been essential for notice to have been given to Fowler, if he had not have had an agent to whose care and management this contest; wad confided; but as it is apparent he had such an agent, to whom notice was regularly given, the purposes of justice were fully attained, and the requisitions of the act substantially satisfied.
It is also contended the circuit court erred in overruling the motion of Fowler to require Halbert, before judgment coidd be entered upon the commissioners’ report, to prove the improvements which were valued were made under some particular claim, and upon the land from which he was evicted by the judgment in favor of Fowler.
The law having required commissioners to be appoint-, ed, and assigned to them their duty, their determinations, if consistent with the provisions of the law under which they have acted, should surely be presumed true, subject however to the controlling authority of the court by whose order they are appointed, and by whom their report is to be confirmed. As, therefore, the commis* sioners are required to go upon the land in contest, and assess its value, together with that of the improvements, &c. when they have done so, and reported accordingly, that report, as held by the court below, should be received as prima facie evidence of the improvements being made upon the land in contest, and were made under the claim of the occupant. Should the occupant have no such claim as entitles him to compensation for his improvements, then the court would act erroneously in making an order appointing commissioners; but where the judgment of eviction, as in the present case, is given by a court of law, the order itself appointing the commissioners will rather imply the occupant manifested such a claim. In the present case, however, Halbert’s right is not made to depend upon implication only: for the, record presents full proof of a claim derived from a public record.
Considering, therefore, the proceedings of the commissioners substantially correct, we are presented with the inquiry, whether they should have been appointed and regulated in their report according to the act of .1812? •
Were the provisions of that act in any respect equivocal, whereupon construction could in any degree he in *54 dulged, as it contains provisions more prejudicial to lh& successful claimants than the act to which it purports to be an amendment, upon the settled principle of construe-lion that statutes should not retrospect, we should be disposed to construe it not to affect this nor any other case which was depending upon its passage. But as this common law principle of construction took its rise upon a supposed intention in the law-makers, not to enact laws calculated to affect anterior rights, its influence cannot prevail, when by the most express and pointed expressions of the law a different intention is manifested.
Thatthe legislature intended the act in question should embrace as well cases which were then depending as those which might thereafter be commenced, does not admit of a doubt. If such were not their intention, they have used language for a different purpose than its words usually and obviously import; and it is impossible to imagine what language would have been used (if that substituted does not convey the idea) had the legislature-intended to embrace such a class of cases.
If then the intention of the law-makers is to be regarded in the construction of statutes, and language has been used in the one in question which clearly imports an intention that cases depending at its passage should bp controlled by it, the proceedings in the present case w ere correctly had, unless, as is contended, there exists something either in the compact w ith Virginia or the constitution of this country, restraining the legislature from the passage of such a law.
We are unable to perceive any provision in the compact, which can possibly by any fair rule of construction have that effect. The state of Virginia, it is true, when about to yield its assent to the then district of Kentucky being erected into an independent state, aware of the various conflicting claims to lands within the proposed state, and regardful of the rights and interests of those who had previously acquired claims under the laws of that state, by a compact with the proposed state reserved a determination of those rights and interests to the Jaws then existing in the state of Virginia, and provided for thei/ security and validity under the laws of this state. That the legislature of this state is restrained from the passage of any law repugnant to the previsions of this compact, wiü not b e denied ¡ not, only on *55 ⅛? the oícasioñ and maimer the compact was entered ⅛-to, bu t because also it has since been incorporated into the constitution of this country»- and now forms part of the paramount law Of the land. According, however, !* the provisions of this compact, we cannot suppose the legislature of this state aré inhibited from enacting any law calculated to make successful claimants compensate the occupants of lands for impi-otcments made thereon; but that it was intended to secure to claimants of lands their rights and interests therein by preserving a determination of their titles by the laws under Which they were acquired.
That such is the meaning of the compact, seems not only to have been the opinion of the legislature, on the various occasions whenever the question has been agitated, but that opinion has been uniformly approved and recognized by the judiciary of this country. Bto* not long subsequent to the formation of this state, an occupying claimant law Was enacted by its authority ; and although that act in all its parts is not precisely ‘like the one under which the proceedings in this case have been tad» it contains provisions in Some respects variant from the principles recognized by the laws existing in the state of Virginia at the time of the separation, and is liable to the same objection in relation to the compact. ¾⅛⅛ act has been uniformly acted upon and approved ever since ; and in the multiplicity of cases whifeh have Occurred and been determined by it, in’ no One instance is it believed ever to have been held repugnant to the compact. .
Whatever doubts, therefore, might have b eenentert ai'ft-fed upon the construction of the compact, were this acasfe of the first impression, when the authority of the legislature has been acquiesced in and approved by the current of decisions ever smee the passage Of the first law upon the subject» We are not at this time disposed tode* part from the authority Of those cases.
It remains» therefore, to determine whether the act of 1⅛1¾ contains any thing repugnant to the constitution of this state ?
By the laW in force at the passage of this act, successful claimants of lands were entitled to rents from the commencement of the suit by which the right might he determined, and by the act in question no rents are allowed but from the time of entering final judgment by *56 the Court of original jurisdiction. As, therefore, Fowler's suit was brought before the passage of the latter act ; according to its provisions he is deprived of rents to which he would otherwise have been entitled ; and hence it is contended; that act* as respects the case of Fowler* as it tends to divest him of those rents, is repugnant to the constitution of this state*
. From an attentive examination of the constitution, we have been totally unable to find any provision in it inhibiting the passage of such a law. That part of the constitution by which the power of the legislature inthis respect is supposed to be abridged, is to be found in the 18th section of the 10th article ; and provides “ that no ex post facto law* nor any law impairing contracts* shall be made.” That the latter clause of this section has no bearing upon the case before us, is too plain to admit of a doubt: for as the claim for improvements made upon the land is not founded upon contract, it is impossible-any contract can be impaired by the passage of the law under which that claim is asserted. If by ex post facto laws are understood retrospective laws generally, as well in relation to civil as criminal matters, then it will he admitted the act in question, as it relates to the present case, is repugnant to the constitution* We do not, however, suppose the definition of the terms ex post facto laws, can be extended to embrace civil matters. Those terms are technical, and must be construed according to their received and well known meaning and import when the constitution was adopted; and if so understood, the uniform opinion of judges, both ancient and modern, confine their import to crimes, pains and penalties.
If then we are correct in supposing the constitution contains no clause inhibiting the legislature from the passage of the act under which the proceedings in this case have been had, the power of the legislature to enact such a law results as a necessary consequence : for it is incontrovertibly true, the legislature may enact any law, the passage of which is not forbid by either the constitution of this state or that of the United States.
Upon the whole, we think the judgment of the court below is correct, and must be affirmed with costs and damages.