Judge Mills
delivered the opinion.
Fowler, the plaintiff in error, recovered a judgment in ejectment on an elder patent, against the defendants in error, and they filed their bill with injunction, setting up, and relying upon, their entry and junior patent. The judgment in ejectment was obtained and the injunction granted during the existence of the act of assembly, entitled,, “An act concerning occupying claimants of land,” passed 27th February, 1797, and anterior to the passage of the act entitled, “An act to amend an act entitled an act concerning occupying claimants of land,’ passed January 31, 1812; and the chancery suit was pending at the passage of the latter act. The injunction was at length dissolved, and the bill dismissed. The appointment of commissioners under these laws was then to be made. The successful claimant, now plaintiff in error, contended that the appointment ought to be made in the action of ejectment, and that the former act ought to be taken by the commissioners as the rule of assessment; while the other party insisted, that the appointment of commissioners ought to be an apendage to the chancery suit, and the latter act ought to govern their casé. The court decided in favor of the occupants, and made the appointment in the chancery suit, and directed the commissioners to take the last act as their guide. Under this act they reported, and ail the proceedings were had. To this decision the plaintiff in error e$- *138 cepted; and this presents the main question for the decision coaFt*
As (he plaintiff in error had resorted to a legal remedy, and to which, holding the elder patent, he was bound to resort, and had completed his suit by judgment of eviction, under an existing law, which made his cause of action complete, tor rents, according to the provisions of that law, it might be a question of some magnitude to determine how far the legislature could go, by retrospective provisions in destroying that vested right of action — or whether, in so doing, they would not usurp judicial authority, which is vcs'ed by the constitution in a co ordinate branch of the government? We have used the expression, cause of action for rents, because we consider the proceedings by commissioners under these laws as an appendage to another suit for the land, answering ail the ends to each or either party, of an action at law or suit in equity, to recover their respective demands against each other, and substituted by the statute in lieu of such action or suit. Before it will be necessary to answer the question suggested, it will be proper to examine the act, to see whether such retrospective provision exists; for the difficulty suggested can never furnish any court a pleasant subject of discussion. It is a rule in expounding sla'utes, that they never should be construed to operate retrospectively, unless by express provision or necessary and irresistible implication. It is not necessary, we conceive, to strain this rule in its application to the statute befóte us. For we discover in it no provision which necessarily changes and impairs the vested and complete rights of the parties. It was decided by this court in the case of Fowler vs. Halbert, 4 Bibb, 52, that the latter statute did apply to a suit pending at its passage, the judgment in which was subsequently rendered. For the-contest was undetermined, and no right, under the former act, had accrued to the successful claimant, or been completely vested in him, by the determination of the suit for the land, until after the latter act had taken effect. But it has been decided by this court, in the case of Payne vs. Conner, &c. 3 Bibb, 180, that the latter act was prospective in its provisions, and that it embraced only future judgments or decrees, and that the former act existed and was operative upon cases which did not come within the provisions or perview of the latter act. This relieves us from ihc difficulties attendant upon retrospective provisions, and *139 leaves with us the simple enquiry, whether the present case is within the perview of the first or second act? The first act shews by its first section that it is intended to embrace the case of every person evicted. The second section shews clearly, that it is the judgment or decree of eviction pronounced either in law or equity, which authorises .the up. pointment of commissioners, and proceedings under the act, and that the judgment for improvements shaii be rendered infavorof the person evicted. These, With other provisions and expressions contained in that act, shew that it was after those judgments or decrees, which operated upon the possession of the land, and by which the occupant couid be compelled to quit the premises, that commissioners could be appointed. Suppose the occupant, while that act was in force, had been living on land, covered by an eider outstanding patent, which be conceived, for his safety, he ought to extinguish by the force of his entry, and that for this purpose he had filed his bill; and that a hill would lie in such case, there could exist no reasonable doubt:---That he should fail in supporting his entry as valid, and his hill should be dismissed, and his adversary had obtained no judgment at law affecting his possession, could either of the parties, on pronouncing such a decree, dismissing tire bill, obtain commissioners and effectuate the proceedings allowed by the statute? It is conceived not. There would be Bo judgment or decree of eviction, and the obtaining .of that depended upon the contingency of the elder patentes being able to recover a judgment of eviction against hint, and this recovery might be defeated by various defences at law, such as the act of limitations, and many other defen-ces which might be enumerated. The same question may be asked with respect to occupants holding under elder grants, who are enabled, by an act of assembly, to sustain their bill against junior grants, and thus put the validity of the claims in issue. If they should be unsuccessful, and thteir bills should be dismissed, and no counter decree should be rendered in favor of their adversary, which evicted the land, they could not come within t he provisions of the first statute under consideration. The adverse claimant would first be bound to obtain a decree of eviction, if he could; and when he obtained this, he would be entitled to the statutory remedy to recover his rents and waste, allowing a credit for lasting and valuable improvements. Wbat then was the situation of these parties under the first act of the *140 legislature? The plaintiff in error having the elder legaj title was bound to resort to his action at law, and could not sue in equity. This he did; and while that act was in force, he completed his remedy by obtaining judgment of eviction This remedy then, to recover waste and rents from the time of notice, fixed by that act, was open to Inm, and he might have proceeded under it, had not his adversary arrested further proceedings by injunction. In like manner the occupants might then have ceased further efforts to retain the land, and were entitled to commissioners to assess their improvements under the provisions of the law then in force; and no doubt they might have been successful, upon shewing such title in themselves as that statute, required. It is true that they elected to abandon the provisions of the statute in their favor for a time, and to file their bill and obtain an injunction. But this bill, with their injunction, they might have abandoned at any time, and have resorted back to their demand for commissioners, before the last act was passed. And what was their injunction? A restraining order of the chancellor, directing further proceedings to be staid until lie investigated an alleged equity, which the court of law could not try. It did not destroy either the rights, or even the remedies of either of the parties, but only suspended them. If he ultimately determined that the equity pretended was no equity, and that the injunction ought never to have been granted in favor of the occupants, then each party might resort back to the position in which they stood when the judgment at law was rendered, and demand remedy afforded either for improvements, waste or rents. But as the chancellor did not thus decide, until after the latter act was adopted, materially changing the criterion oT right, the court below decided, that the occupants ought to be allowed to avail themselves of this statute, and be discharged bj force of legislative provisions, from a great part of these rents and waste, to which they were subjected by the first judgment and the first law. This position this court will not readily assent to, unless some provision of the last act imperiously requires it. This leads to an examination of the last act. Its expressions, as settled in the case of Payne vs. Conner, &c. arc prospective. In the third section the language is somewhat similar to that used in the second section of the first act. It speaks of a judgment or decree against the validity of the occupant’s claim; but the third section uses th^ *141 words, ^judgment of eviction.” The ground, however, on which the decision below is based, must be the next fol lowing words, “or in case he shall assert his claim in equity, then the court rendering the decree against him.” In giving construction to these expressions, it may be contended on one side, that “the decree to be rendered must be a decree of eviction, and that this is evidenced by phrases in the same act, and that the occupant may assert his claim as completely in the attitude of defendant as that of plaintiff, and that if this clause does not embrace the case of occupants, who are evicted by a complainant in equity, their case is not provided for by tire last act. Oa the other hand it may be said that the clause was inserted for the express purpose of embracing those casos, where the occu-paul. by bill with injunction, liad contended unsuccessfully against a judgment at law, and that no other interpretation can be given them Without determining which of these positions or constructions is the correct one, and whether the court of law or court of. equity ought to appoint com missiouers, acid whether the rents ought to be counted from the rendition of the judgment at law, or the decree in equi-tv, in a case where both the judgment and decree were rendered after the last act took effect, we are satisfied tbe present occupants cannot come within the expressions. The words “in case he shall assert his claim in equity,” are clearly prospective, and apply to future assertions of claim, and includes the person who should thereafter assert, and not him who had already asserted a claim in equity. The defendants in error, in the present case, had filed their bill, and had asserted their claim, and were straggling for a decree in favor of its validity. Had this description of persons been intended by tbe legislature, it is more than probable that they would have expressed it by words not ambiguous. it will not result from this construction that all pending suits in equity, where the defendants had filed their bills or answers before the passage of the last act, and whose suits were then pending, were excluded by these expressions. For there were many such against whom no judgments or decrees of eviction had been previously rendered, and tbe act plainly shews, as was decided in the case of Fowler vs. Halbert, that future judgments or decrees were included. It is only the cases of those against whom the adversaries had completed their remedy, by obtaining judgments or decrees of eviction previous to the passage of *142 the latter act, which can be affected by this decision. Their or remedies were not changed by the second law, and of course the court below erred in appointing the commissioners as an appendage to the chancery' suit, and applying the last statute in favor of the occupants, when the judgment in ejectment, and the act of 1797, applied to and embraced their case. And although the successful claimant elected to compel the occupants to take the land at the valuation of commissioners, and to convey the land, yet, as was decided by this court in the case of Clay vs. Miller, 4 Bibb, 461, he is entitled to a writ of error to reverse the proceedings
occu.- ¡™* force at the time 1he ju^gmem^n fjectmer.t, ⅛ govern the maj uRVe !>eer¡suspend-'njunc*
Hag gin for plaintiff in error.
The remaining questions arise out of the subsequent decisions of the court below, on the commissioners’ report made under the act of 1812, But as it is decided that that act was improperly applied, these questions need not now be noticed. The order appointing commissioners, and all subsequent proceedings thereon, must be reversed with costs, and the cause remanded to that court, with directions, to quash the report with costs, and to commence and carry On the proceedings under the act of 1797, according to the motion of the plaintiff in error.