Judge Mills
delivered the Opinion of the Court.
On the 20th of May, 1822, Fisher the appellant, brought his action of ejectment against Cockerill, and on the 17th June, 1823, recovered a verdict and judgment for the preinises claimed.
AndCockerill at the same .time, applied for and .obtained an order appointing commissioners to value his improvements. This order of appointment in all things conformed to the act of Assembly concerning occupying claimants of land, approved December 20th, 1820, except that the court added to the .order a direction to .the commissioners to assess the rents after judgment, pursuant to the requisitions of the act concerning occupants, of 1812* which was in some points, virtually repealed by the act of 1820.
The commissioners acted and made up their report pursuant to the act of 1820; omitting to obey the instruction of the court, which directed rents *130 to be assessed after judgment. Their report was returned to the September court, 1823, and remained in court for judgment.
Motion to quash the report made at March, 1824, overruled, and judgm-nt according to the act of 1820.
Act of Janury, 1824, repealing the act of 1820.
ft is no objection to the report of the commissioners, made conformable to law, that it varies from the erroneous directions of the order of bourt.
Points of difference between the act of 1812, and of 1820.
At the March term, 1824, the successful claimant appeared, and moved the court to quash the report of the commissioners, and the court overruled the motion; and the record does not fiumi h us with the grounds of this motion. The court then proceeded to render judgment in favor of the occupant for the amount of improvements assessed by the commissioners.
But before this judgment the act of 1820 was repealed, to-wit: on the 7th January 1824, Session acts, 450. The following are the words which relate to that subject: “ Be it further enacted, That the act entitled, an act to amend an act concerning occupying claimants of land, passed twentieth of December, one thousand eight hundred and twenty, be, and the same is hereby repealed, and the provisions of the act passed the thirty-first day of January, one thousand eight hundred and twelve, entitled, ‘an act concerning occupying claimants of lands,’ which were repealed by that act he, and the same are hereby declared to be in full force.”
To reverse this judgment this writ of error is prosecuted.
It is objected that the report made by the commissioners is variant from the order of court. We observe no variance between the order of court and the report, except that the commissioners did not report the rents after judgment, when the order directed it. But the law of 18,20 did not require, but actually dispensed with such an assessment, which before that time had been requisite. And as the order of court in this respect, required more than the law then in force required, and the commissioners disregarded it, we cannot make it a ground for reversing the judgment.
It is also assigned for error, that this act of 1820, was unconstitutional. It differs from the proceeding act of 1812 in some points, and particularly, in dispensing with the value of the land, in not allowing *131 either the successful claimant to make his election to compel the occupant to keep the land, or the occupant to elect to take the land; in disallowing rents after judgment, and in giving the occupant a right of possession forever, until the money is made.
Query — as to the constitutionality of all the provisions of the act of 1820.
Clause of the act of 1820, destroying the right of the successful claimant, under the act of 1812, to compel the occupant to buy the land, or of the occupant to take it at the price fixed by the commissioners, was not unconstitutional, but valid.
Act of >97, charged the occupant with rents, from the institution of the suit, and for one year before, where there was a proper notice given.'
*131 Whether all these variances from the act of 1812 are, or are not, strictly constitutional, we need not now inquire, and it is probable, as the act of 1820 has passed away, it may never become necessary that any court should strictly examine into the consistency of every clause of it with the constitution, either of the state or nation; and as part of an act may be constitutional and have effect, while other parts are not so, we have now nothing to do with any part of the act, except that which secures to the occupant the assessment of, and a judgment for, the value of his improvements; whether he can or can-' not keep possession till he is paid, is not now before us.
As to destroying the right of the successful claimant, to compel the occupant to buy the land at the price fixed by the commissioners, or of the occupant to take it at that price, without consulting each other mutually, as provided for by the act of 1812: the right at first was purely statutary, and it was competent for the legislature to destroy it as to all future cases, as they did, by the act of 1820. Indeed, it might as well be doubted whether the legislature could at first confer the power on one individual to compel another to buy his estate; or on one to compel a sale without the consent of the other, as that they can regulate, modify or withhold, or withdraw the power. The arguments in the first case would be as strong as in the latter. In making this change, by the act of 1820, from that of 1812, the legislature did not, therefore, violate any constitutional provision.
The next alteration made by the act of 1820, is the destruction of the claim for rents against the occupant, after the rendition of the original judgment. This is but a small claim in the relation between the, successful claimant and the occupant— far less than what the legislature had previously *132 abolished: By the act of 1797, the successful claimant was entitled to rent from the lio'ur suit was brought, and indeed for one year before, if he had¡. within that time, served a notice on the occupant accompanied with an attested copy of His title: This claim, the legislature, Hy the act of 1812, curtailed to the lime judgment was rendered, and it was only an exercise of the same power to a greater extent, in talcing away the rents after judgment by the act of 1S20.
Act of 1812, cut off all mils before judgment, nuil act of .1820, destroyed all claim to rents after judgment.
Both tho acts of 1812, and 1820, fixing the occupant’s compensation for improvements, are valid.
Wlicre both the parties hold under claims derived from this State, the reasoning of the minority of the slit preme court; in Green vs. Biddle, does n'ot apply.
As to the claim fdf the value Of improvements, the act of 1820 fixes that at a criterion equally, if not more favorable to the successful claimant than the act of 1812, aiid in this respect there is no change made to his prejudice. It is then difficult to raiste any objection or argument against the act of 1820, sO far as its provisions are now before us, which would n'ot equally militaie against the act of 1812, and it has been so often held by this court that the act of 1812 is constitutional, and so frequently has its provisions been carried into' effect, without a question as to its validity, that it is unnecessary to cite the cases or repeat their reasoning. The question must remain undisturbed till some power is found adequate to reverse our decisions!
There is one other difference betwéen tlie act of 1820 and that of 1812. The latter, as held by this court, applied to advdrsc conflicting titles only, each derived frchri tire government by record evidence, separate and distinct from each other, while the latter act includes controversies under the samé title. But that this is a controversy under the same title is not pretended, and the record docs not shew us whether it is a conflict Between two persons, each deriving their title from Kentucky or from Virginia. If there is any presumption to he indulged upon this subject, it might bo supposed that it is á controversy between claims exclusively derived from the laws of Kentucky, as the land lies in a part of the State, where this government, anti not Virginia, disposed of most of the lands as vacant; so that it cannot be seen whether the case comes within the *133 reasoning of a minority of the Supreme Court, in the case of Green vs. Biddle, 8 Wheat. 1.
Question stated — “Did . the repeal of the act of 1820, take ámj the power of the court, to render judgment under it?”
ICx post facto' laws prohibited in our constitution, applies only to laws inflicting punishments or pcnalties.
Tint query — ■ ought not the prohibition to embrace the retrospectivo laws.'
Roman doctrine against retrospective laws.
The remaining question is, did the repeal of the act of 1820, as before stated, take away the power of the court below to render judgment under it, or in other words, must that repeal be so construed as to have a retrospective operation upon all the occupant had previously done, so as to render his proceedings null, and after he had paid the cost'of them, did it turn him around to assert a (Jifferent right and claim under the new law — a claim lessened by all the rents since-judgment during the time that he was carried on by the hope that he would recover bn the act of 1820, till the legislature drew it from beneath his feet?
The constitution of the United States as well as that of this State, forbids-the legislature of any State to pass ex post facto laws. But this restriction has been so often held, bo'th by this and Other cdufts, as well as the Supreme Court of the Nation, to apply only to the criminal or penal code — that is, to laws inflicting punishments 'or penalties on crimes after the crimes were committed, that it would bé absurd to say that this restriction literally includes this case.
But it is so repugnant to the moral sense of every ¡correct man, that the legislature should delude or intend to entice the individuals of the community, by presenting to them rights against- other individuals, under prescribed rales, and after the pursuit is undertaken and brought almost to a dose, at great expense, to snatch away the right, and leave the pursuer to pay the cost of the pursuit, that it might 'even, with some plausibility, he argued that such a delegation of legislative power was not within the terms of the compact — that it was a right never ceded to any department of the government, by the people, when they gave the delegated powers which, they have conferred by the constitution.
All governments which can pretendió any civilization, have repudiated the principles of retrospective Jaws. Rome, in the career of her' martial *134 glory, even under the wild and capricious dominion of her (Jtesars did so; and we may say in the words of the late Chief Justice Kent, of New-York, “no correct civilian, and especially no proud admirer of the ancient republic, (if any such then existed) could have reflected on this interference with private rights and pending suits, without disgust and indignation; and we are rather surprised to find that under the violent and singular genius of the Roman government, the principle before us should have been acknowledged and obeyed to the extent in which wo find it. The fact shews that it must bo founded in the clearest justice.”
Sanio dootriiie in Franco.
In Kurland, the courts ro sort to every conrtruction to avoid tin; retrospectivo effects of statutes.
Oases in the KnjcJish courts.
The same jurist, after finding the same principle in the code of Prance, under its late Emperor, emphatically remarks: “Even French despotism, atrocious as it is, in practice, yields, in its laws, to the authority of such a principle!”
When we come to England, from which much of our jurisprudence is derived, we find there an omnipotent parliament possessing, in conjunction with the Crown, all power, legislative, judicial and executive, capable not only to legislate, but to adjudicate upon the lives and liberty and property of the subject at once. But the courts of that country have refused to give laws a retrospective effect, unless compelled, and have resorted to every means of construction to avoid such an operation. A few cases-out of many will be noticed.
The rule that a statute shall not be construed retrospectively if possible, is laid down in 6. Bac. Abr. 370; 1 Black. Com. 44; Co. Lit. 300, a. and in almost every elementary writer that treats of the subject. A statute of that country declared in express terms that after the 24th of June, 1677, “no action should he brought upon any agreement made in consideration of marriage” — or in parol for the sale of lands, &c. as is provided in our act to prevent frauds and perjuries. Yet actions were brought after the said 24th of June, on promises made before and coming completely within the letter of the statute, which declared that none such should be brought, and the courts of that country sustained *135 them, the statute notwithstanding, and refused to give the act any retrospective effect, 4 Burr. 2560; 2 Show. 117; 2 Mod. 310; 2 Ld. Raym. 1352.
Gases in VeSi,lia ía,™spectiv'’
Cases in fjouth Carolma'
Case in Hie f/OUU 01 1110 UnitedSUil.es
*135 In the case of Couch vs. Jeffries. 4 Burr. 2460, there is a strong case, and not unlike the present in principle, except it is somewhat stronger. A statute imposed a penalty upon delinquents who should be guilty of a specified, offence, mid authorized any informer to sue for that penalty in an action qui tam. An informer brought such a suit, and during its pendency, an act of Parliament passed, allowing such offenders to rid themselves from payment of the penalty by paying a stamp duty and procuring the evidence of it. After verdict and before judgment, the defendant, who wras convict, tendered the evidence of his payment of the stamp duty, and prayed his discharge. The court of Kings Bench refused to admit the evidence, because that would be giving the latter statute a retrospective operation and rendered judgment under the first statute. Surely if an English court could do this in the face of an omnipotent Parliament, and in favor of a common informer seeking a penalty due, not in conscience, hut by positive law, a court of this country will be justified in giving judgment in favor of an occupant as the price of his labor, notwithstanding tbe legislature, -while he was pursuing his remedy, has modified the law.which gave it, so far as to increase the charge against him.
With these cases accord the decisions of Virginia. For the Court of Appeals of that State, in the case of Elliott vs. Lyell, 3 Call. 268, 286, has laid down the broad rule that statutes ar oprima facie. prospective in their operations, and retrospective laws being odious, it ought never to be presumed that the legislature intended to pass them, when the words will admit of any other meaning.
The same principle is recognized by the Supreme Court of South Carolina, in the case of Osborne vs. Huger, 1 Bay’s Rep. 179.
The case of Ogden vs. Blackledge, 2 Cranch, 272, in the Supreme Court of the United States, not *136 only adopts the same principle, but applies it to a case analogous to the present. The legislature of the State or colony, of South Carolina, in 1715, had adopted a law placing a bar of seven years, on all debts brought against the estate of a decedent. In 1798, another law was passed, which virtually rc-pcaled the first and removed the bar. In 1798 an action was brought fora debt, which, according to the first laiv, had been -barred, and if at all recover-j able, it must be under the act of 1789, removing the bar. In 1799, after the suit was brought, and her fore its trial, the legislature passed an act explanatory of the act of 1789, and declaring that nothing therein contained should be considered as repealing the act of 1715, hut its provisions should be considered in force. The defendant, in his plea, relied on the act of 1715, as revived and ratified by the act of 1799. The plaintiff demurred, and pn the counsel attempting to argue that the act of 1799, passed alter the suit brought, could not effect the claim of the plaintiff, he was stopped by the court because tbc point was supposed to be too plain to admit of argument, and the court rendered judgment notwithstanding the latter act, and it was not permitted to have any bearing on the case, and the suit was ended, carrying out the rights of tlie parties as they stood when the action was commenced.
Held in South Carolina, an act concerning the limitation of actions, did not nllect an action pending at the date of the "enactment.
In New- i orle, hold that an act, passed pending a suit against a .sheriff lor an oocapo, giving him a defence ho had not at the time of the sail brought, could not be relied on.
But while citing authorities we must not pass by the case iu the Supreme Court of New-York, of Dash vs. Van Kleeck, 7 Jolin. 477, where the same question in principle now before us, was discussed and settled by that court with no ordinary ability. There a statute existed making the sheriff liable for an escape or even a small departure from the jail liberties, and not permitting the sheriff to avail himself of a recaption on immediate pursuit, or of the immediate return of the prisoner. An escape of this kind happened, and an action was brought for it. Pending the- suit, the legislature passed an act explanatory of the first, and declaring it should not he so construed as to prevent any sheriff from availing himself of the recaption óf the prisoner or of the prisoner’s return, as at common law. The sheriff pleaded such recaption cr *137 return and relied on the last act, and the .question was whether this act could b,e allowed to alter the rights of the parties as they existed at the commencement of the suit, and held that it could not, and the cause was decided precisely as if the last act Bad never passed.
Parol contracts for land made before the act of frauds and perjuries, ars valid.
Payne and Conner, 3 Bibb, 180, reconciled with the present case..
Samepf Fo.vr« ler and Halbert, 4 Bibb, 52. '
In Fowler and Basket, 3 Marsh. 137, the retrospective operation of the act of 1812, denied.
Because the act of 1824, names neither pending nor future .cases, jt shall be taken by the courts, the future only were in-fended.
*137 With these authorities the decisions of this court /concur. Parol contracts for land, made before our act to prevent frauds and perjuries took effect, haye been decreed.
And in a case under our occupying claimant laws., Payne vs. Conner &c. 3 Bibb, 180, where the occupant had his improvements assessed under t.he act of 1797, but before the judgment was rendered that act was repealed by the act of 1812, the judgr ment was rendered as if the latter act had not passed. It is true, in that case the question is made to turn on a partial repeal, and it seems to be admitted, that in case of a total repeal, the judgment ought not to'’ have been rendered. But this must be urn derstood as limited to cases where the claim for, improvements had never been asserted in a court before the repealing law. In such cases generally, the law under which the claim was first asserted, ought to prevail throughout,
In the case of Fowler vs. Halbert, 4 Bibb, 52, where an action of ejectment was commenced before the act of 1812, but no judgment rendered till after the passage of that act, the occupant was permitted to assert his claim for improvements under the latter act, and not under the preyious act of 1797.
But in the case of Fowler vs. Basket, 3 Marsh. 137, the court to avoid the retrospective operation of the act of 1812, applied the act of 1797, to a suit where the judgment in ejectment had been rendered before the passage of the latter act.
In this case we perceive nothing in the repealing act which requires it to be so .construed, as to destroy pending controversies. If it has that effect, it must be, by affixing to it a construction which takes from the court in which such claims for improvements are pending all power to proceed further; and *138 thus it by consequence only, takes all remedy from the party. It cannot he supposed that while the legislature knew that many cases were pending in the courts under the act of 1820, they intended to stop the action of the courts in these cases, and to snatch from the occupants the remedy then in their hands, and to turn them back to a new and different proceeding,- charged with rents and praying the costs of their first attempt. It is due to that department of government to acquit it of such an impropriety by supposing at once, that as neither pending ©r .future cases are named in the repealing law, it was only intended to apply to, and operate upon the latter class, and that aware of the judicial decisions, which refuse to give to laws retrospective operation, it was deemed wholly unnecessary to except pending controversies from all' the effects of the repeal.
Query of the constitutionality of retrospective laws.
Calder and wife vs. Bull and wife, in the supreme court, cited and reconciled with this case.
*138 So palbably obvious is the necessity of this well sanctioned principle in a just government, that it has been supposed by the American courts in the cases cited to have a constitutional preservation. By the majority of the constitutions ox the States, the powers of government, legislative, executive and judicial, are divided and the different powers confided to different hands, with a restriction on each division of magistracy, prohibiting them from exercising any of the powers confided to the othei’s respectively. Now some of the cases pited have supposed if the legislature can by the passage of a law, sweep a part or all of the pending controversies from the dockets of the courts, or dismiss the suits, or render their claims inoperative, by changing the rules of evidence, or restraining or abolishing the power to proceed, they would thus assume and indirectly at least, exercise and act upon the powers of the judicial department; and it is for this among other reasons, that the American courts in the cases cited, have maintained the principle opposed to retrospective operation.
The case of Calder and wife vs. Bull and wife, 3 Dall. 386, may be thought opposed to this principle, because it seems there to be held, that retros *139 pective laws of some kind, are necessary in government. If they are, it must be in cases of necessity, Avhich admit of no other redress, and it furnishes no argument that they ought to be introduced by construction. In that case there was not such necessity of sanctioning retrospective laws as may he supposed.
In Connecticut, there was no constitution nor division of legislative and judicial powers»
Judgment-Chief justice dissenting— See his opinion following the next case.r
Wicklijfe and Crittenden, for plaintiff; Combs, for defendant.
In Connecticut a judicial controversy had been decided and further power to retry it, according to the rules which governed the judicial department, did not exist. An application was made to the legislature of the State for a rehearing of the matter, and that body passed a resolution or act directing a neAV trial before the judiciary, Avhich was accordingly had, and it was decided by the Supreme ' Court of the' United States, that this was not an ex post facto law, within the meaning of the constitution of the United States, and that court could not adjudicate upon the validity of the law on other points. But all the retrospective operation of this law has an easy solution. Connecticut had no constitution, but acted under its ancient charter, as a colony, from the Crown. There was no division of pouters legislative, judicial and executive, confided to different hands, and the legislature possessed all those powers whenever that department chose to exercise them. If that body therefore, should have undertaken to review, reverse or affirm, all the judgments of the courts, it would be difficult to find any check upon the proceeding, from any other department. This case, therefore, as a px-ecedent in the controversy before us, cannot have any bearing.
Upon the Avhole, therefore, a majority of this court have concluded this controversy must be ended according to the act under which it Avas commenced, and that the judgment must be affirmed with cost.
Ouse stated to be the same, and tuled on the same principles as the next case above, except} 8s to a ferry.
Value of a ferry obtainel, td be established by the occupying claimant bn the land, cannot be allowed out of the improvements by the commissioners, under the stalutes:
Successful claimant does not} by his recovery of the land, obtain the ferry, which had been granted to iheoccupant by the public.
Definition of a ferry.