## CHILDS V. SHOWER.

1. **Evidence:** TAX DEED. When a deed, executed pursuant to a sale for taxes, and conveying several parcels of land, is offered in evidence to show *color of title* under a tax-sale, it is competent to show by evidence *aliunde* that the parcels were not sold for one gross sum.

2. **Occupying claimant:** DEFECTIVE TAX-DEED. A lot in the town of Fort Des Moines, sold at tax-sale, was conveyed to the purchaser by a deed setting out the following description: "Town — Ft. De Mos.; Lots — 3, 6, 7, Block 2": *Held*, That the alleged defect in the description did not deprive the purchaser of *color of title* under the sale, within the meaning of § 2268 of the Revision of 1860.

3. —— STATUTE CONSTRUED. It was clearly the purpose of the Legislature, by chapter 153, Laws 1858 (Rev. 1860, § 2274), to invest the courts with power to render a money judgment in favor of the occupant for the amount of his improvements.

4. —— STATUTE UNCONSTITUTIONAL. Chapter 153, Laws of 1858 (Rev., 1860, § 2274), authorizing the rendition of a general money judgment in favor of the occupying claimant, and a general execution to enforce the same, is unconstitutional and invalid.

*Arg.* 1. —— LAWS CONSTITUTIONAL. The constitutionality of laws based upon the equitable principle of compensating (usually from the rents and profits of the land) the *bona fide occupant*, for permanent and beneficial improvements, which have augmented the value of the property, has been recognized, and their validity cannot be questioned.

2. Statute: VALID AND INVALID PROVISIONS. When the valid provisions of a law are so interlaced with those which are invalid that they cannot be separated, the entire law falls.

5. Statute: REPEAL BY UNCONSTITUTIONAL ACT. A general clause, repealing so much of a former law as is in conflict with an act which is unconstitutional, does not abrogate the law declared to be repealed.

6. —— APPLICATION OF THE RULE. Chapter 153 of the Laws of 1858 (Rev., 1860, § 2274), was unconstitutional, and did not conflict with the provisions of chapter 80 of the Code of 1851 ; and the clause in the section of the former act, declaring all laws inconsistent therewith repealed, did not repeal the provisions of the latter which would be inconsistent with the terms of the former, if it was valid.

7. Occupying claimant: ASSIGNEE. A grantee is an assignee, within the meaning of § 2268 of the Revision of 1860.

8. Referee: FINDING OF. The finding of a referee stands like the verdict of a jury or the finding of a court, and will be reversed by an appellate court, on the ground that it is against the evidence, only when it is manifest that the ground is well taken.

9. Occupying claimant: INTEREST: RENT. The owner of the land is entitled to rent for the occupation, based upon the value of the land and the improvements, where he is required to pay interest upon the value of the improvements; where he is not required to pay such interest, the rent should be computed on the value of the land alone.

10. —— MEASURE OF VALUE. The occupant is not entitled to the expense or cost of making improvements, but to the amount only which they have really or actually augmented the value of the property.

11. New trial: ERROR WITHOUT PREJUDICE. A judgment will not be reversed, upon the ground that evidence was rejected improperly, when, in view of all the circumstances and testimony, it could not have altered, and ought not to have altered, the finding upon which the judgment is rendered.

*Appeal from Polk District Court.*

FRIDAY, APRIL 7.

OCCUPYING CLAIMANT LAW; COLOR OF TITLE; GOOD FAITH; CONSTITUTIONALITY OF ACT OF MARCH, 1858; REPEAL; DAMAGES, &C.—The defendant herein, Shower, was found, in the proper action against Childs, to be the

real owner of lot 7, block 2, Des Moines. This proceeding was thereupon instituted by Childs (whom we shall designate as the plaintiff or occupant), under the statute, to recover of the owner (Shower) the value of certain improvements made upon the property by Childs.

His petition is in due form, and need not specially be noticed. He claims $3,000. His right is denied by the defendant. The cause was referred to E. J. Ingersoll, Esq., sole referee, by whom it was tried. The testimony is voluminous. The report of the referee as to the facts, except his finding that the improvements were made in good faith, is not controverted.

It is essential to state, as compactly as possible, the substance of the report. It finds:

1. That, July 23, 1855, one G. R. Moss purchased lot seven above in good faith, at the sale for delinquent taxes made by the treasurer of Polk county, and received a deed.

2. November 3d, 1857, Moss obtained a decree of foreclosure upon the tax-deed against said lot (it and other lands being made defendants).

3. In December, 1857, Moss sold and deeded this lot to Reynolds, and in the same month Reynolds made to the plaintiff (Childs) a warranty deed to the lot for the consideration of $400.

4. By virtue of this deed, Childs took possession of the lot in the spring of 1858, and during the spring and summer of the same year he erected thereon a dwelling-house, fenced the lot, dug a well and cistern, built a barn, set out fruit-trees, &c., and on the 1st day of October, 1858, moved into the house, which he and his family have ever since occupied. [Up to this time no appeal from or attack upon the tax decree was taken or made by Shower.]

5. The improvements are of the value of $2,500.

6. Rent of lot, aside from improvements, $10 per year; rent of lot and improvements, $180 per year.

7. "That, in the spring of 1858, after the plaintiff had made his contracts with other persons to build and erect the said dwelling-house and improvements, and after such persons had actually commenced work, and had a portion of the materials on the ground, and were at work thereon, the agent for the defendant, W. H. Leas, informed plaintiff that the lot was owned or claimed by the defendant."

8. The value of the lot is $400, aside from the improvements.

9. Childs' improvements were made in *good faith.*

10. Shower did not commence his action of ejectment against Childs until November 19th, 1858, and did not recover till March, 1860. Shower is the owner of the real title direct from government of the United States, not from the State. [This last finding was made at defendant's request.] As conclusions of law, the referee finds:

1. That plaintiff Childs had color of title as required by the statute.

2. That he is entitled to recover of defendant $2,500, for improvements less the rent of said lot for 3 years and 6 months, at $10 per year, leaving due the plaintiff the sum of $2,465.

And the District Court, conformably to the report of the referee, rendered in favor of Childs and against Shower an ordinary money judgment for the sum of $2,504$\frac{22}{100}$, with interest from date of judgment and costs, to be enforced by general execution.

The opinion contains the other facts necessary to understand the questions made and determined.

Shower appeals.

*S. V. White* for Shower.

*C. C. Nourse* for Childs.

Childs v. Shower.

DILLON, J. — The appellant's counsel requests that each point made by him shall be determined by the court. As he has made no question not properly and necessarily in the case, his request is reasonable, and shall be complied with. But as the questions are numerous, we must dispose of the less important ones briefly.

I. The first question made, arises upon § 2268 of the Revision, which declares that "the purchaser in good faith

1. EVI-
DENCE:
tax deed.

at any judicial or tax sale, made by a proper person or officer, has color of title, whether such person or officer had sufficient authority to sell or not, unless such want of authority was known to such purchaser at the time of the sale; and the rights of such purchaser pass to his assignee," &c.

The lot in question was advertised with three others for the tax for which it was sold to Moss: thus (copying from tax book):

| Lots. | Block. | Value. | Tax. | Remarks. |
|-------|--------|--------|------|----------|
| 3, 5, 6, and 7. | 2 | $1,200 | $1 80 | Lots 36, 37, sold G. G. Moss. |

The point made by defendant is, that the lots in controversy were advertised and sold *in gross* with others, and that the deed from the treasurer to Moss, which conveyed this lot, also conveyed eight thousand one hundred and twenty acres of land and fifteen town lots, for the sum of $321.89, and, therefore, the sale and deed to Moss were void. Evidence was admitted, and we think properly, to show that these lands and lots were not sold for one gross sum.

The purchaser might take a deed embracing many parcels of land. Code, 1851, § 504. We hold that there is nothing in the tax-deed which deprives the holder thereof, or his assignee, of the protection given by section 2268 of

VOL. XVIII.—34

the Revision before quoted. (*Burdett* v. *Silsbee*, 15 Texas, 604; *Thompson* v. *Cragg*, 24 Id., 582; *Harrison* v. *Castner*, 11 Ohio S. R., 339; *Whitney* v. *Richardson*, 31 Verm. [2 Shaw], 300.)

II. In this tax-deed the lot in question was conveyed to Moss by the following description: "Also the following town lots:

| | Town. | Lots. | Block. |
|---|---|---|---|
| 2. OCCUPY-ING CLAIM-ANT: de-fective tax deed. | Ft. Des Moines. | 3, 6, 7 | 2 " |

The referee did not err in treating this alleged defect in the description as not being sufficient to deprive the plaintiff of "color of title," within the meaning of section 2268 of the Revision.

III. The next point of appellant is, that there is no authority of law for rendering a judgment for any amount in the case. This brings up a question under the act of March, 1858 (Rev., § 2274), amending chapter 80 of the Code of 1851.

3. —— statute construed.

The language of the act of 1858 is, "that in all cases where judgments have been or may hereafter be rendered *under the provisions of chapter* 80 *of the Code of Iowa*, * * * the owner of the land may at any time within three years pay the amount of the same," &c., &c., &c. The argument is, that the Code of 1851 authorized no judgment; that the legislature, by the act of March, 1858, evidently supposed it did, but they were mistaken; hence there is no more authority, and no other authority, in law, to enter up a judgment under the act of 1858, than there was under the Code of 1851.

This point is too finely drawn. We construe laws by ascertaining, from their whole purport, the intention of the legislature. It is impossible to read the act in the Code of

1851, and then the act of 1858, without perceiving that the legislature, by the latter act (Rev., § 2274), intended to invest the courts with the power to render a money judgment in favor of the occupant for the amount of his improvements.

Such, we say, was manifestly and indubitably the intention of the legislature. How far this intention has been constitutionally executed, is the next question for consideration.

IV. And here the position taken by the defendant is, that if the act of March, 1858 (Rev., chap. 97, art. II, p. 401), authorizes the rendition of a general money judgment in favor of the occupying claimant, and a general execution to enforce the same, it is unconstitutional.

<div style="margin-left:2em">4. —<br>statute<br>unconsti-<br>tutional.</div>

By the Code of 1851 (chap. 80), the rights of the *bona fide* occupant and of the owner of the land are these : The owner could not put the occupant out of possession until the provisions of that chapter were complied with. The value of the improvements and the value of the land, aside from the improvements, were separately to be ascertained. The owner of the land had the election to pay the appraised value of the improvements and take the property; if he did not pay within a reasonable time, to be fixed by the court, the occupant might take the property by paying for the value of the same, aside from the improvements. If this was not done in a reasonable time, the occupant and owner were declared to be tenants-in-common, in proportion to the value of their respective interests.

This was a fair and equitable law, though, as against the owner of the land, going to the utmost verge of legislative power. (*McCoy* v. *Grandy*, 3 Ohio S. R., 463; referred to *infra*, and case below cited).

Under that law it was expressly decided that the court had no power to render a personal judgment against the

owner of the land for the value of the improvements, nor
to order the land to be sold to satisfy such judgment,
nor to issue a special execution for that purpose. (*Dungan*
v. *Von Phul*, 8 Iowa, 263.)   By the amendatory act of 1858,
(*copied in note*), it is provided, in substance, that the occu-
pant shall have judgment against the owner of the land for
the value of the improvements, and the latter shall have
three years within which to pay the judgment; if he does
not pay within that time, then the occupant may issue a
general execution against, not only the premises upon
which the improvements were made, but "any other prop-
erty, not exempt from execution, belonging to the owner
of the title."[1]   This law cannot be sustained.   It has been
with great difficulty, and after no little struggle, that acts,
like chapter 80 of the Code of 1851, have been upheld.
They invade the rights of private property.   Still, for the
reasons suggested, and to some extent elaborated in *Par-
sons* v. *Moses*, 16 Iowa, 440, laws based upon the equitable
principle of compensating (usually from the rents and

[1] NOTE. — The following is a copy of "An act to amend chapter eighty of
the Code of Iowa," passed March, 23, 1858 :—

SECTION 1. Be it enacted by the General Assembly of the State of Iowa,
that in all cases where judgments have been, or may hereafter be, rendered
in any of the courts of this State, under the provisions of chapter eighty of
the Code of Iowa, in favor of an occupying claimant, or claimants, for the
amount of his, her or their improvements, the owner of the title to the
land may, at any time within three years after the date of such judgment,
pay the amount of the same; and he shall immediately upon the payment
of the same, have the right to the possession of the land, for which purpose
a writ shall be issued by the clerk of the court where the judgment was ren-
dered, upon the application of the owner of the title aforesaid.

§ 2. If the owner of the title does not, within three years from the date
of judgment, pay the amount of the judgment and take possession of the
land, then the owner of the improvements may cause to be issued an execu-
tion against the property of the owner of the title, for the amount of his
judgment, which execution shall be satisfied in the same manner as in any
other case; and when the execution is satisfied, all claims of the occupying
claimant upon the land and improvements shall cease; but said execution
may be levied upon the lands or any other property not exempt from execu-
tion of the owner of the title.

§ 3. So much of chapter eighty of the Code of Iowa, as comes in conflict
with this act, is hereby repealed.

This act was incorporated in the Revision of 1860, §§ 2274, 2276.

profit of the land), the *bona fide* occupant, for permanent and beneficial improvements, which have augmented the value of the property, have been recognized as valid. It is now too late to question their validity. It is allowable to provide that the owner shall not have possession until he pays for the improvements. And we think the provision of the act of 1851, making the parties, if neither paid the other, tenants-in-common, a most equitable way of adjusting the respective rights of the innocent owner of property, and the *bona fide* improver of the same. That laws to this extent are constitutional, see *Bank of Hamilton* v. *Dudley's Lessees*, 2 Pet., 492, 525; *Hunt* v. *McMahan*, 5 Ohio, 132; 6 Id., 10; *McCoy* v. *Graudy*, 3 Id., 463, (1854); *Armstrong* v. *Jackson*, 1 Blackf. (Ind.), 374; *Tyner* v. *Stoops*, 11 Ind., 22; (Mass.); *Jones* v. *Carter*, 12 Mass., 314; 2 Pick., 507; (N. H.); *Wittington* v. *Corey*, 2 N. H., 115; *Society, &c.*, v. *Wheeler*, 2 Gall. C. C., 105; (Ill.); *Ross* v. *Irving*, 14 Ill., 171 (1852); valuable opinion by TRUMBULL, J.; (Tenn.); *McKinlay* v. *Halliday*, 10 Yerg., 479; 1 Id., 360; *Matthews* v. *Davis*, 6 Humph., 324; (Verm.); *Brown* v. *Storm*, 4 Verm., 37; 20 Id., 614 (Texas); *Saunders* v. *Wilson*, 19 Texas, 194, 201; 24 Id., 582 (Ky.); *Fowler* v. *Halbert*, 4 Bibb, 52; *Fisher* v. *Cockerill*, 5 Mon., 129; *Gaines* v. *Buford*, 1 Dana, 481, 494, and see generally *Parsons* v. *Moses*, 16 Iowa, 440; *Bright* v. *Boyd*, 1 Story C. C., 442; Story's Eq., 799; 2 Kent Com., 335; *Jones* v. *Jones*, 4 Gill. (Md.) 87; *Lamere* v. *Winter*, 13 Ala., 31; *Porter* v. *Hauley*, 5 Eng. (Ark.), 86; *Ford* v. *Halton*, 5 Cal., 319; *Morrison* v. *Robinson*, 31 Penn., 456; 23 Id., 117; *Hearn* v. *Camp.*, 18 Texas, 545, and prior cases in same State there cited.

No lawyer can rise from the examination of these authorities, and not be convinced that the act of 1858 is a flagrant and palpable violation of those rights of property so carefully guarded and so anxiously secured by the Constitution.

Take the facts of this case for illustration: Shower owned a lot in the city of Des Moines. It was sold, without any intentional delinquency on his part, for a trifling tax, and purchased at the sale by Moss. He conveys to Reynolds, and Reynolds to Childs. Childs knew it was a tax title, and consulted a lawyer, who informed him that he would be safe for his improvements at all events. Childs builds an expensive house, and makes costly improvements. All this is done without the knowledge of the owner. It was even done against the warning of one who acted or had acted as his agent, a point presently to be noticed.

Now, this act of 1858 practically makes the owner of the lot a debtor for the value of all improvements put upon it.

The court has found that Shower 'is the owner, and entered up judgment to that effect. If Childs had erected a house worth $10,000 or $100,000, the owner of the lot, though it is worth only $400, would have been liable, under the act of 1858, for the whole amount of the value of the improvements. The judgment for the improvements is a general one, and it is for their value — their whole value. It would be a lien, for aught we see, upon all of the real estate of the owner. It can be made out of any of his property, real or personal. · He cannot escape by saying, "I am willing to lose my lot." If the property does not sell for enough to pay for the improvements upon it, the owner's other property is liable for the deficit. If it burns up, the judgment remains in full force, upon which execution may issue, which "shall be satisfied in the same manner as in any other case." Such a law is unprecedented. It has neither reason, necessity nor precedent to support it. It tramples under foot the constitutional rights of property, and of the citizen. Const., art. 1, §§ 1, 9.

In a recent and well-considered case in Ohio, *McCoy* v. *Grandy*, 3 Ohio (1854), 463, it was decided that an act which gives to the *occupying claimant* the *option* to pay

Childs v. Shower.

for the land and keep it, was unconstitutional. Such a law can only be sustained, it was considered, when the *owner* of the land has the election to pay for the improvements and keep the land. Our statute is not obnoxious to this particular objection; but still the Ohio statute is merciful and just to the owner of the title, compared with the Iowa law of 1858.

So, in Texas, it has been held, that a law requiring the owner, before he can recover for use and occupation, to make a previous tender to the occupant of payment for improvements, is unconstitutional. (*Hearn* v. *Camp*, 18 Texas, 545.)

So far, then, as the act of 1858 authorizes, for improvements made without his consent, the rendition of a *general judgment* against the owner of the land, and its enforcement by a *general execution*, we are constrained to hold it invalid. The other provisions are so dependent upon and interlaced with these, that it must all fall.

If the valid portions of a law, in this case those fixing the time of payment, for example, cannot be separated from, but form connected parts of, those which are invalid, all must must be treated as void. (*Commonwealth* v. *Clapp*, 5 Gray, 97; Id., 482, 486; *Mobile* v. *The State*, 29 Ala., 573; *State* v. *Commissioners*, 5 Ohio S. R., 497; 3 Id., 1; *State* v. *Snow*, 3 R. I., 64; 6 How. [Miss.], 625.)

It is not necessary, in this case, either to affirm or deny the proposition, that it would be competent for the legislature to make the improvements a lien upon the property itself, and to authorize a sale of the specific property to pay for such improvements. The present is not such a law.

V. This brings us to a question, not presented or argued by either counsel, but one which cannot be avoided, and 5. STATUTE: that is, whether the law of the Code of 1851 repeal by an uncon- (chap. 80) is repealed by the unconstitutional stitutional act. act of 1858? If not, then that will govern the rights of the parties to this cause. If thus repealed, then

there would be no valid law in force in the State on the subject of the rights of occupying claimants.

The last clause or section of the act of 1858, Rev., § 2276 (3), is as follows: "So much of chapter 80, of the Code of Iowa (1851), as comes in conflict with this act is hereby repealed." This presents the question as to the effect of a repealing clause in an unconstitutional statute. It perhaps admits of no general answer. It is a question of legislative intention, and this is to be determined from all of the circumstances of the particular instance in hand. If the repealing clause was positive and unconditional, and under circumstances which indicated a design to repeal the old law at all events, it would doubtless be operative, though contained in a statute which was unconstitutional. So, on the other hand, it seems clear that an unconstitutional enactment would not repeal by mere *implication* a former law. Between these two cases, others arise which are more difficult of solution. The present is one of these intermediate cases, but it gives us no real trouble. "*So much* of chapter 80 as comes *in conflict* with this act is repealed." So much, and no more. If no part of it conflicts, that is, legally conflicts, with the former law, then no part of the former law is repealed. Such is the legal attitude of the present case.

In our examination, we have found two cases bearing directly upon this subject. We will briefly allude to them.

In *Times* v. *The State*, 26 Ala., 165 (1855), the repealing clause in an unconstitutional law declares "that all laws contravening the provisions of this act be, and the same are hereby repealed." This was decided not to affect or repeal laws previously in force. The case is exactly in point. The reasoning of the court is satisfactory. It is "evident," says GOLDTHWAITE, J., the organ of the court, "that the intention of the legislature was that the provisions of the former law were only to be repealed if in

conflict with the act. If the new law is void, the provisions of the former law cannot with propriety be said to be in conflict or contravention of it." (See, also, *The State* v. *La Crosse*, 11 Wis., 51.)

In *Meshmeir* v. *The State*, 11 Ind., 484, the court were divided, but the majority inclined to a view different in result, though not in principle. In that case, the repealing clause in an unconstitutional statute was, "that all acts and parts of acts inconsistent with the provisions of this act, are hereby repealed," and the court held (HANNA, J., *dissenting*), that the prior law was repealed. The reasoning of the majority seems to be refined and technical. They admit that an unconstitutional law cannot repeal a prior law by implication. But here they say is "an express repeal." This, as it seems to us, is where the error lies. There was no positive and unconditional repeal, a repeal *only* so far as the two should be *legally* inconsistent. The logical consequence of the conclusions above reached is, that the Code of 1851, chapter 80, applies to and governs the rights of the parties to the present cause.

VI. The deed from Moss to Reynolds, and from Reynolds to Childs (see statement), made the latter the assignee of Moss within the meaning of section 2268 of the Revision. The defendant claims that Childs obtained no interest by virtue of these conveyances, because Moss had before quit-claimed his interest to others.

*7. OCCUPYING CLAIMANT: assignee.*

It may admit of doubt whether it was the intention of Moss, in these quit-claims, to include anything but lands, not his town lots. They described no property specially No claim adverse to Childs has ever been set up under those deeds. And the nature of this proceeding does not make Childs' rights depend upon the question whether his title derived from Moss is superior to another alleged outstanding, but not asserted right, derived, or purporting to be derived, from the same source.

VII. But the point confidently relied upon by the defendant, is that which arises upon the finding of fact

**8. REF-EREE: finding.**

numbered seven in the statement of the case. This has given us no little trouble, and the difficulty is not diminished when we examine the testimony, all of which is before us.

As an original question, we should very strongly incline to the opinion that Childs acted with a degree of *precipitancy, and even rashness*, not compatible with the *good faith* which the law requires in the occupant as an indispensable condition of his right to compensation for improvements. Still the testimony admits, and perhaps not unfairly admits, of two views. The referee has expressly found that Childs acted in *good faith.* This stands like the verdict of a jury or the finding of a court. It cannot be disregarded or set aside as contrary to evidence, except upon a plain case. (*Woodin* v. *Foster*, 16 Barb. S. C., 146; *Fish* v. *Wood*, 4 E. D. Smith, 327; Id., 565; Rev., §§ 3094, 3095, and note.)

Leas did not inform Childs that the taxes were paid, nor of any fact which invalidated Childs' title. Leas represented that the lot was owned or claimed by Shower. This is not a material fact, because Childs knew it had belonged to some one who had permitted it to be sold for taxes. Looking at all that passed between Leas and Childs, if it had turned out that the taxes had been really paid by Shower, and the tax-sale for that reason was invalid, Childs' *good faith* would be much more doubtful than it is.

On the whole, without further detail, we conclude that we are bound by the finding of the referee in relation to the *bona fides* of the plaintiff.

VIII. The referee allowed the owner $10 per year for the use of the lot by the occupant, its value aside from the

**9. OCCUPY-ING CLAIM-ANT: inter-est: rent.**

house. The owner claims that he should be allowed $180 per year, the value of use with house. There would be much ground for this

claim on behalf of the owner, if we had affirmed the judgment of the court below, which made. the owner pay interest on the value of the improvements. If he should thus pay, he should be allowed for the use of them; otherwise not. See, on this subject, *Dungan* v. *Von Phul*, 8 Iowa, 263; *Parsons* v. *Moses*, 16 Id., 440.

· In the posture of this cause, we are not called upon to determine any further question on this head, and this matter is equitably adjusted in the final decree ordered.

IX. The judgment below cannot be reversed for the real or supposed error of the court in rejecting the testimony of the defendant's counsel, who proposed to prove that the value of the property was not enhanced by the improvements, in the market, to exceed $1,500 to $1,750; and that the house, lot and all would not sell on the market for more than $2,000.

*10. —— measure of value.*

The statute allows for the value of the "improvements;" this means beneficial improvements, which have added to the value or worth of the property. The occupant is to be allowed, not the expense or costs of such improvements, but the amount only that they have actually and really augmented the value of the property. (*Parsons* v. *Moses*, 16 Iowa, 440, 445; 2 Kent Com., 336.)

The occupant may erect a costly business house in a locality where no business is transacted, or a hotel greatly disproportioned in size and expensiveness to the wants of the place. He could not be allowed the cost of these, or their value under other circumstances. The question is, how much the improvements, *under the circumstances* of the special case, are worth — their value to the property.

This is a practical question, and, as such, should be decided. We think, as illustrating this question, and as affording aid for a more intelligent determination of it, that the proposed testimony should not have been rejected.

But we cannot, for this, reverse the case, for the reason that, if received, it could not (considering all of the testi- mony and circumstances) have altered, and ought not to have altered, the finding of the referee. (See, on this subject, *Pelamourges* v. *Clark*, 9 Iowa, 1.) Even under the rule asserted in the dissenting opinion in that case, a new trial should not, under the circumstances of this case, be granted for the rejection of the testimony.

11. NEW TRIAL: error with- out preju- dice.

X. The result is, that the judgment of the court below must be set aside; the report of the referee confirmed, except so far as it recommends a judgment and execution in favor of Childs. Adjusting the rights of the parties upon the basis of the report, and under chapter 80 of the Code of 1851, we find the value of the improvements, aside from the lot, to be, . . . . . . . . . . . . . . . . . . . . . $2,500

Value of use of lot, at $10 per year for six years, . 60

$2,440

Value of lot, aside from improvements, . . . . . . . . . 400

Shower has the option to pay the above $2,440, without interest (so long as Childs occupies the premises), at any time within three years: failing to do so, Childs may take the property by paying Shower, at any time within one year thereafter, the $400, with six per cent interest from this date. If neither thus pays, the parties are to be tenants in common — Shower owning an undivided one-fourth (¼), and Childs an undivided three-fourths (¾), of the premises.

Costs on appeal to be borne by Childs; in court below by Shower.

COLE, J., having been of counsel, took no part.