## TYNER and Another *v.* STOOPS.[*]

*A.* sold and delivered to *B. & C.*, partners, 11,250 pounds of pork, taking a memorandum of the price agreed upon, which was to be paid six months after the delivery of the pork. Afterwards, *A.* had a settlement with *B. & C.*, when he surrendered the memorandum and took the individual note of *B.* for the price of the pork, payable six months after the delivery. The note fell due *July* 1, 1854; *A.* did not sue upon it; on the 10th of *November*, 1854, *B.* failed. *A.* sued *B. & C.* upon the original debt, offering to cancel the note of *B.*

*Held*, that the note of *B.* was not a collateral security; that it was but the written promise of one partner to pay a debt for which both were liable; that it gave *A.* no additional security; and that the failure of *A.* to sue upon it, or demand payment before *B.'s* insolvency, did not discharge the firm, and cannot be set up in bar.

*Held*, also, that a charge assuming the fact that *C.* settled the partnership affairs upon the hypothesis that the original debt was paid by the arrangement between *A.* and *B.*, was properly refused; because whether *C.* did so or not, was a question for the jury.

---

[*] The petition for a rehearing in this case, was filed on the 10th of *July*, and overruled on the 13th of *October*.

May Term,
1858.

TYNER
v.
STOOPS.

*Held*, also, that an admission by *A.* after *B.'s* insolvency, to the effect that the acceptance of *B.'s* note had discharged *C.*, is no evidence that *A.*, at the time he took *B.'s* note, agreed to discharge *C.*

The taking of a promissory note from one of several joint debtors, or the note of a third person, for a preëxisting debt, is not a discharge of the debt, unless such is the express agreement.

APPEAL from the *Franklin* Court of Common Pleas.

Saturday,
June 19.

WORDEN, J.—This was an action by the appellee against the appellants, to recover the value of 11,250 pounds of pork, sold and delivered by him to them.

The defendants answered—1. In denial; 2. Payment; 3. That the defendants delivered to the plaintiff, the note of *Richard Tyner* for 400 dollars, which the plaintiff received in full satisfaction of the claim; 4. That the pork, at the price agreed upon, amounted to 392 dollars, 4 cents; that, at the time of the sale and delivery thereof, viz., on the 30th of *December*, 1853, and before and afterwards, the plaintiff and *Richard Tyner*, one of the defendants, had other private dealings and accounts between them; that afterwards, on the 21st of *February*, 1854, the plaintiff and *Richard Tyner* settled their private dealings and accounts, and also for the pork, and upon the settlement, there was found due the plaintiff the sum of 400 dollars, including the price of the pork, and thereupon *R. Tyner* executed and delivered to the plaintiff his individual note for said 400 dollars, which the plaintiff received in full satisfaction of the claim, and thereupon the price of the pork was credited to *Tyner* and charged to defendants, and afterwards, on the 23d of *June*, 1854, the partnership affairs between the defendants were settled and closed accordingly; that the plaintiff still holds the note of *Tyner*, partly paid and partly unpaid; that on the 10th of *November*, 1854, said *Tyner* failed, and since then has been and is insolvent.

The plaintiff replied to the second paragraph denying the payment, and demurred to the third and fourth paragraphs, and the demurrer was sustained as to the third, and overruled as to the fourth.

The plaintiff thereupon replied to the fourth, that the pork was sold and delivered on the 30th of *December*, 1853,

on a credit of six months, whereupon the defendants executed to the plaintiff a memorandum in writing by which they acknowledged the receipt of the pork to be paid for at the rate of four dollars per 100 pounds, which memorandum the plaintiff held until the 21st of *February*, 1854, when he presented the same to the agent of the defendants, *Richard H. Tyner*, (by whom the memorandum was executed on behalf of defendants), who then, on behalf of the defendants, received the same; and on the plaintiff's suggesting to him that he the plaintiff ought to have a note for the price of the pork, the said *Richard H.* still being such agent of defendants, as such agent, executed and delivered to the plaintiff a promissory note for the price of the pork, as follows, viz.:

"$400.   *Brookville, Ind.    February* 21st, 1854.   For value received, on the first day of *July* next I promise to pay to *Robert Stoops*, or order, four hundred dollars.   *R. Tyner, per R. H. Tyner.*"

Which note the plaintiff received and accepted as a note or memorandum of the amount due him from the defendants for the pork, and not in payment or satisfaction thereof.   That at the time of the sale of the pork, and at the time of the making of the note, said *Richard Tyner* was insolvent, and ever since has been, which insolvency he concealed, and which was wholly unknown to the plaintiff; and the plaintiff produces the note and offers to surrender it to be canceled.

The cause was tried by a jury, who found for the plaintiff the sum of 400 dollars, on which there was judgment, over a motion for a new trial.

The first error assigned is, the sustaining of the demurrer to the third paragraph of the answer.

This we cannot notice, as no exception was taken to the ruling below.

The bill of exceptions filed, sets out the evidence, and discloses the points relied upon for the reversal of the judgment.

The material facts, as they appear from the evidence, are, that about the last of *December*, 1853, the plaintiff sold

and delivered to the defendants, pork to the amount in value of about 400 dollars, at prices agreed upon, upon a credit of six months, for which a receipt or memorandum was then given by defendants to plaintiff. Afterwards, *Stoops* came to the counting-room of defendants, and said he wanted to settle, and produced the receipt given him as above. Defendants' agent looked over the pork books and saw the amount of the pork, also over the store book, and the cash book of *R. Tyner*, and found, including all the dealings, that there was due to *Stoops* over 400 dollars, all over which sum was then paid him, and the note above set out was then executed and delivered to him, made payable six months from the time the pork was delivered. *Stoops* knew it was the individual note of *R. Tyner*, and not of *Tyner & McCarty.* Defendants' agent so told him at the time. *McCarty* was not present at the time the note was given. *Stoops*, at the time of this transaction, before the note was given, remarked that he wanted something to show the amount of the pork, when defendants' agent proposed to write, and did write, the note in question, *Stoops* remarking—"anything to show the amount they owed him for the pork." There was nothing said, at the time of this transaction, about discharging *McCarty*, or the note being a satisfaction of the claim. One witness (a clerk of the defendants) thinks that at that time *Tyner* was largely in debt, and doubted his solvency, but he continued in business up to his failure, about the 10th of *November*, 1854, and his credit was good till then to any amount, as the witness says. *Stoops* lives in sight of defendant *Tyner's*. *Stoops* continued to deal with the firm, and at one time in the summer after the sale of the pork, came to their establishment and asked for money. Defendants' clerk desired to know if they owed him money; when he replied that his credit was good—that the firm owed him more than that any how. *Tyner* made heavy payments after the note to *Stoops* fell due. After *Tyner's* failure *Stoops* said it would be hard to lose the amount of the note, if he had to lose it. Witness thinks the pork transactions of 1853 and 1854 were settled in *June*, 1854, except-

ing some small items that could not then be got at, between *Tyner & McCarty* and *White, Warren & Co.* (It may here be remarked that the evidence tends to show that *White, Warren & Co.*, of *Philadelphia*, were partners with *Tyner & McCarty* in the pork business, and that *Stoops* knew that fact, but no point is made as to their non-joinder.) After *Tyner's* failure, *Stoops* said he had lost the claim, and that he might have got the money if he had called for it, but he thought *Tyner* was good.

These are believed to be all the material facts involved in the case.

The defendants asked the Court to charge the jury as follows, viz.:

1. "That if they believed the pork was sold and delivered to the defendants, with others engaged in the pork business, on the 30th of *December*, 1853; and that afterwards, on the 21st of *February*, 1854, the plaintiff took the individual note of *R. Tyner* for the amount of the price of the pork, due *July* 1, 1854; and that if, when the note became due on the 1st of *July*, 1854, *Tyner*, the maker of the note, was solvent and able to pay the note, and so continued until the 10th of *November*, 1854, when he failed, permitting two terms of Court to pass without suit on the note, in which he might sue, in this case the verdict must be for the defendant, notwithstanding the note was not originally taken by the plaintiff in satisfaction of the pork debt."

2. "That if the note was taken by *Stoops* in satisfaction of the pork debt, he cannot afterwards, on failure of *Tyner*, resort to the pork debt and sue the pork firm."

3. "That to permit *Stoops* to take *Tyner's* note for this debt, and hold it for more than four months after it fell due, until *Tyner's* failure, would be a fraud on *McCarty*, who settled the partnership affairs on the hypothesis that it was paid by the arrangement between *Stoops* and *Tyner*."

Which charges were refused, and the defendants excepted.

We are of opinion that the above charges were correctly refused.

The first, is predicated upon the idea that *Stoops* was bound to use the same diligence to collect the note of *Tyner*, that he would be if he had received the same as a collateral security, and that *laches* in that respect would discharge the firm. But we do not view the note of *Tyner* as a collateral security. It was but the written promise of one partner to pay a debt for which both were liable. It gave *Stoops* no security in addition to what he already had. The time of payment was not changed, and we do not think that the neglect of *Stoops* to sue *Tyner*, or to demand payment before his insolvency, can be set up in bar of the action.

The case of *Smith & Marshall* v. *Rogers & Bement*, 17 Johns. 340, is directly in point upon this question, and precisely such a case as this in all essential particulars. The plaintiffs, *Smith & Marshall*, had sold defendants a quantity of merchandize. After the sale one of the defendants, *Bement*, wrote the plaintiffs as follows: " Our firm was dissolved on the 3d instant and I assumed your demand, which you may rest assured will be paid as soon as possible." The plaintiffs answered as follows: " We observe your partnership is dissolved, and that you have assumed our debt, which we are satisfied with." Afterwards *Bement* gave his note to the plaintiffs, who gave him the following receipt: " Received, *Albany*, *August* 13, 1816, from Mr. *C. N. Bement* his note on demand, with interest, for six hundred dollars, when paid to be placed to the credit of *Rogers & Bement's* account with us; also 2 dollars and 86 cents for balance of said account." *Bement* continued to do business until *November*, 1817, when he became insolvent. No suit was brought against him to compel payment of the note, nor was *Rogers* called upon for payment of the original debt until after the insolvency of *Bement*. The Court say—" This receipt expressly mentions that the note, when paid, is to be placed to the credit of the late firm, evidently retaining the parties who contracted the debt originally, and continuing their liability until the note should be paid off; it was therefore the duty of *Rogers* to see that *Bement* complied with the engagement made with

him as to the payment of this debt; and that the plaintiffs, knowing of this arrangement, are not, on that account, to be considered in default, for omitting to call on *Rogers* until *Bement's* insolvency. It was the particular duty of *Rogers* to guard against such an event, by causing the debt to be paid by *Bement*, without delay; and it is probable that his misplaced confidence in his former partner made him easy on the subject. There certainly can be no reason why the plaintiffs, or those beneficially interested under them, should suffer by his negligence."

The case at bar differs from *Slevin* v. *Morrow*, 4 Ind. R. 425, cited by counsel, as that was a case where notes of third persons were taken as collaterals, the proceeds, when collected, to be applied to the payment of the principal debt. It was held that the plaintiffs were required to use reasonable diligence to collect the collaterals.

The second instruction asked we think was correctly refused because it was not applicable to the case made by the testimony.

The taking of a promissory note from one of several joint debtors, or the note of a third person, for a preëxisting debt, is not a discharge of the debt, unless such is the express agreement. *Schermerhorn* v. *Loines*, 7 Johns. 311.—*Muldon* v. *Whitlock*, 1 Cowen, 290. In the case last cited it is said by SUTHERLAND, J., that "no principle of law is better settled than that taking a note either from one of several joint debtors, or from a third person, for a preëxisting debt, is no payment, unless it be expressly agreed to be taken as payment, and at the risk of the creditor. Nor does the taking a note, and giving a receipt for so much cash in full of the original debt, amount to evidence of such express agreement to take the note in payment. The agreement must be clearly and explicitly proved by the original debtor, or he will be held liable."

In *Massachusetts*, the law is probably different. *French* v. *Price*, 24 Pick. 13. In this case it is held that a negotiable note taken for property sold, or for a preëxisting debt by simple contract, is *prima facie* evidence of payment; but it is there admitted that by the law of *England*

*New York*, and some other states, the rule is otherwise. Numerous cases might be cited, were it necessary, to show that the rule, not only in *England* and *New York*, but in most of the states of the *Union* and in the Courts of the United *States*, is different from that in *Massachusetts*. *Vide* Chitty on Cont., Perkins's ed., p. 767, and note.

Holding, then, that the taking of the note of *Tyner* was not an extinguishment of the original debt, in the absence of an express agreement to that effect, it becomes material to inquire whether there was any evidence of such agreement. We think there was not, and that therefore the charge in question was correctly refused, as being inapplicable to the case.

The third charge was correctly refused, because it assumes that *McCarty* settled the partnership affairs on the hypothesis that the original debt was paid by the arrangement between *Stoops* and *Tyner*. Whether he did so settle the partnership affairs, was a question of fact that should not have been assumed, but left to the jury to determine. We have not examined whether the charge is otherwise correct.

The Court, of its own volition, gave charges to the jury, the giving of which is assigned for error; but we see no error in them of which the appellants can complain. If there was any error, it was in charging the law, in some particulars, too favorably for the defendants. The appellants, in their brief, have not pointed out any error against them in the charges given, and we see none.

The defendants moved for a new trial upon the ground, amongst other things, of newly discovered evidence. The affidavit states that they can prove " that the plaintiff admitted and stated, since *Tyner's* failure, that he had lost his said debt, and that by taking *Tyner's* note for the 400 dollars, he, the plaintiff, had discharged *McCarty* from the debt."

We regard this statement of the plaintiff as a mere inference or conclusion of his, from the facts that existed. The language employed does not, as we think, import that at the time of the taking of the note, he agreed to dis-

May Term,
1858.

TYNER
v.
STOOPS.

charge *Mc Carty* and look to *Tyner* alone for payment. He says he had discharged *Mc Carty*. How? Not by any contract or agreement to that effect, but simply by taking *Tyner's* note. He speaks of the means by which he had, as he supposed, discharged *Mc Carty*, showing, evidently, that he had reference to the supposed effect of taking the note, and not that he had made an agreement to discharge him.

The motion for a new trial upon this ground, as well as upon the ground that the verdict is not sustained by the evidence, was correctly overruled.

*Per Curiam.*—The judgment is affirmed with costs.

HANNA, J., dissented.

*J. Morrison, J. D. Howland,* and *G. Holland,* for the appellants (1).

*J. Ryman* and *P. L. Spooner,* for the appellee.

(1) Counsel for the appellants, in their brief, made, in substance, the following argument:

Will a note, given and accepted in satisfaction and discharge of a parol debt, merge and destroy the original cause of action? In *England* it is well settled that it will.   *Sard* v. *Rhodes,* 1 M. & W. 153.—15 *id.* 23.

In *New York,* the law upon the point seems to be unsettled, but the current of authorities in the other states, is in favor of the proposition that it will. *Darlington* v. *Gray,* 5 Whart. 487.—11 Mass. R. 359.—2 Met. 76.—*Thatcher et al.* v. *Dinsmore,* 5 Mass. R. 299.—*Maneely* v. *McGee et al.,* 6 Mass. R. 143. —2 Greenl. Ev. 425, 426, and cases cited.   *Story,* in his work on Promissory Notes, 521, says: "But if it is agreed between the parties, as it well may be, that the substituted note, shall be an absolute payment of the original debt or note, then it will operate as an absolute satisfaction and extinguishment thereof."   And see the authorities there cited, particularly the very sensible opinion of Chief Justice MARSHALL, in *Sheehy* v. *Mandeville,* 6 Cranch, 253, 267.   If it be the note of a third person, the law is well settled. 16 Johns. 273.—2 Wash. C. C. 24.—5 Wend. 85.—21 *id.* 451.

The case of the acceptance of the note of one partner for the liability of the firm, is the same as the acceptance of the note of a third person.   Story on Partnership, 252, § 155, and note 2, with authorities cited, and § 392, authorities in note 1.—Collyer on Partnership, book 3, ch. 3, §§ 383, 398, 2d edition.—6 Cranch, 253.—12 Johns. 409.—Wash. C. C. 271.—2 Grattan, 373. —1 Cow. 290.—4 Met. 12.—5 Wheat. 531.—4 Watts & Serg. 100.—5 Barn. & Adol. 925.

It is a well settled principle that the acceptance of a higher security or obligation from the debtor, for the payment of the same debt, is an extinguishment of a lower security for that debt.   1 Mason, 482.—3 Watts & Serg. 276.—3 B. Mon. 178.—1 Pet. C. C. 74.—2 Johns. 213.—5 Mass. R. 11.

Under our statute all written contracts not under seal are elevated to the condition of sealed instruments at common law; and if at common law the taking of a sealed obligation for a parol debt, would merge the original claim, and the taking of a written note or contract not under seal, will have the same effect—and this is the common sense of the thing. Our statute of 1852, provides: "There shall be no difference, in evidence, between sealed and unsealed writings; and every writing not sealed shall have the same force and effect that it would have if sealed." 2 R. S. p. 90.

The Court below erred, in refusing to give the first instruction. It is well settled that a creditor accepting a note, either as collateral security or conditional payment, is bound to use due diligence in attempting to collect the money when due; and if he fails to do this, the original debt is discharged and regarded as paid. Story on Promissory Notes, p. 521, § 405, cases and notes. This question has been directly decided in this Court in *Slevin* v. *Hazzard & Morrow*, 4 Ind. R. 427, in which the Court say: "The transfer of the note in question was not an absolute payment of the original indebtedness, but when the holder fails to realize the money through his own *laches*, his debtor has a right to have it considered as a satisfaction of his debt."

It is a fraud upon the other partners to permit *Stoops* to take the note of *Tyner*, and charge the firm debt as paid, and have the pork firm settled upon the hypothesis of such payment, and then after *Tyner's* insolvency, to resort to the original consideration, and recover from the pork firm. See *Harris & Donaldson* v. *Lindsay*, 4 Wash. C. C. 98, where the subject is very ably discussed by Judge WASHINGTON. The hinge of the decision there was, that the funds of the partnership had been given to one partner, and the creditor had entered into such arrangements with that partner, and so amalgamated that debt with others, that the retiring partner "could never plead payment of the balance due by the partnership, even though a larger sum than that due by them should have been paid by the partner, whose separate security had been accepted, out of the very funds retained by him for that purpose." See *Arnold* v. *Camp*, 12 Johns. 409.—*James* v. *Hackley*, 16 *id.* 273.—*Parker* v. *Cousins*, 2 Grattan, 373. —*Wildes et al.* v. *Fessenden et al.*, 4 Met. 12.

In their petition for a rehearing, the counsel cited 1 Smith's Leading Cases, p. 389 *et seq.*, where the authorities are fully reviewed, and, also, *Nicklaus* v. *Roach*, 3 Ind. R. 78.

May Term,
1857.