No. 8108.

ALBRIGHT ET AL. *v.* GRIFFIN.

PROMISSORY NOTE.—*Renewal Note.*—*Payable in Bank.*—*Evidence.*—*Principal
and Surety.*—*Forged Names.*—*Rescission.*—A., M. and H. made their note to
G. payable one year after date, M. and H. signing as sureties for A., but it
not appearing that G. knew of their suretyship. When due, A. took up

the note, paying the interest, at 12 per cent., for the past year and for a year in advance, and for the principal delivering to G. a new note payable in bank, but not "to order or bearer," signed as was the first note but the names of M. and H. being forged thereto. A. held this note until after due, when, learning of the forgery, without surrendering the new note or offering to return the money received with it, he brought this action upon the original note.

*Held,* that the action is maintainable.

*Held,* also, that G. had the right to treat the money paid him as a payment on the original note. The case is not one of rescission of contract. The new note, if in all respects valid, would have been only a new evidence of the pre-existing indebtedness.

*Held,* also, that, if the new note had been negotiable, it might perhaps have been necessary to bring it into court to be surrendered or cancelled, but, their names being forged, the sureties could not raise the question.

*Held,* also, that if the note in question had been put into judgment and execution against A., it would not have extinguished the right of action on the surrendered note.

*Held,* also, that there was no binding extension of time, even if G. had known that M. and H. were sureties.

SAME.—*Law Merchant.*—Promissory notes, payable at a bank in this State, but not "to order or bearer," are not governed by the law merchant.

SAME.—*Payment.—Merger.*—The giving of such note in renewal of a former one, or for an antecedent debt, unless expressly taken as payment, at the risk of the taker, does not pay or merge the original liability; and, upon default in the payment of the new note, the holder is remitted to his right of action on the former obligation.

SAME.—*New Note.—Discharge of Prior Note.*—Whether the paper be mercantile or non-negotiable, if some of the names are not genuine, and such fact is not known to the taker, it will not operate as a discharge of the prior liability.

SAME.—*Extension of Time.*—An extension of time given to the principal debtor, the creditor not having notice that the others were sureties, does not discharge them.

From the Shelby Circuit Court.

*E. P. Ferris, W. W. Spencer, A. F. Wray* and *J. S. Ferris,* for appellants.

*T. B. Adams* and *L. T. Michener,* for appellee.

WOODS, J.—Over the exception of the appellants, the court gave judgment upon a special verdict in favor of the appellee, who was the plaintiff in the action. Errors and cross errors are assigned upon various rulings upon demurrers to

.the pleadings, but the questions thus presented seem to be all involved in the ruling upon the verdict. We therefore confine our consideration to that.

The verdict was as follows:

"1. We find that, on the 20th day of October, 1874, John Albright, with Silas Metzger and George Hartman as his sureties, gave a note, payable in the First National Bank of Shelbyville, Indiana, to plaintiff, Charles Griffin, due one year after date, without relief from valuation or appraisement laws, with ten per cent. interest after maturity, and attorney's fees if suit be instituted on the same, for the sum of $448, and that the amount of money loaned at the time by the plaintiff to John Albright was $400.

"2. We further find that, on the 20th day of October, 1875, John Albright, in the absence of the defendants Silas Metzger and George Hartman, went to the residence of the plaintiff, and paid plaintiff the sum of $96, and gave plaintiff a note, payable in the First National Bank of Shelbyville, Indiana, dated October 20th, 1875, for $400, due one year after date, with ten per cent. interest after maturity, and without relief from valuation or appraisement laws; and that the names of John Albright, Silas Metzger and George Hartman were signed to said note; and that, as to the defendants in this action, the names of Metzger and Hartman, upon said note, were forgeries, and had not been signed by them, or for them with their knowledge and consent; and that the plaintiff, without any knowledge of the forgery of said signatures, received the note from said John Albright, with his genuine signature thereto, and, on receipt of the $96 aforesaid, gave up to John Albright the note for $448, after tearing the signatures to the same almost off, so that there was but one-half inch of paper by which the names were attached to the note; and John Albright gave the note to Silas Metzger soon after the 20th of October, 1875, who has kept and still has it; and that said Metzger or Hartman had no knowledge of the execution of the $400 note, or the payment of the $96 by Al-

bright to Griffin, until the 20th of October, 1876, when the $400 note was presented to them for payment, when they each notified the plaintiff that the note, as to each of them, was a forgery, and they would not pay it.

" 3. There have been no payments on either note except the $96, paid by Albright October 20th, 1875, when the second note was delivered to the plaintiff.

" 4. We find that on the 20th of October, 1875, without the knowledge or consent of either Metzger or Hartman, the plaintiff did extend the time of payment of the $400 loaned to Albright by the plaintiff, in which transaction Metzger and Hartman were the sureties of Albright only so far as the first note for $448 was concerned, on the payment of $48, the interest past due, which was included in the $448 note, and the further sum of $48 as interest in advance on the $400; and that the time for the payment of the $400 note was fixed definitely between the plaintiff and Albright at the time, as one year, to wit, from October 20th, 1875, to October 20th, 1876.

" 5. Before the commencement of this suit, to wit, March 29th, 1878, the plaintiff demanded of Silas Metzger the note of October 20th, 1874, which was refused by Metzger; and that at the time of the demand the plaintiff did not offer to return to Mr. Metzger, or to Hartman or Albright, the $96 in money which he had received, or the $400 note of October 20th, 1875, which he still retains in his possession.

" 6. A reasonable attorney's fee in this case is $50.

" 7. This suit was commenced May 6th, 1878."

Upon these facts the jury found that the amount due the plaintiff, if anything, was $511.36, and for that sum the court rendered judgment on the 10th day of April, 1879.

The counsel for the appellants urge several reasons against the right of the plaintiff to a judgment on the verdict. They say that no fraud is shown on the part of Albright; that he made no representation that the signatures of Metzger and Hartman were genuine, and, so far as the verdict shows, did

not know that they were not genuine; and that the plaintiff therefore took the note at his own risk. But that, if fraud were conceded, the plaintiff, after notice of the facts, had kept the note and money paid him, and by so doing, and by delaying to bring his action, had lost the right, which otherwise he might have had, of resorting to the original obligation.

These propositions involve to some extent, as we conceive, a misapprehension both of the facts found and of the law applicable to the case.

As to the facts, the complaint shows that the first note in question, whose genuineness is not disputed, was negotiable according to the law merchant; but neither the complaint, answers nor verdict show that the second note was of that character. The statute is, that "notes payable to order or bearer in a bank in this State shall be negotiable as inland bills of exchange." While it appears from the verdict, that both notes were made payable in a bank in the State, neither contained the words of negotiability, "to order or bearer."

As to the question of fraud on the part of Albright, it is enough to say, that, if he knew that the names of Metzger and Hartman were forged to the second note, he perpetrated an actual fraud in procuring the plaintiff to accept it and to surrender the original note; and, if he was ignorant of the fact that the names were forged, his presentation of the note to the plaintiff with those names upon it was, under the circumstances, equivalent to a representation by him that the signatures were genuine, and operated to the plaintiff's prejudice as much as if a wilful misrepresentation had been made. And even if it were conceded that Albright acted in good faith, believing the signatures all genuine, the result would be the same. In that case, the delivery and acceptance of the renewal note came about through the mutual mistake of Albright and the plaintiff, and the transaction was no more binding on the latter than if he had been drawn into it by fraud.

It necessarily follows that there was no such agreement for

the extension of time as operated to discharge the sureties. The receipt of the $96, to be applied one-half to the principal debt and the remainder as interest for the ensuing year, was not a separate transaction, unaffected by the fraud or mistake connected with the receipt of the note. The entire debt was due to the plaintiff, and, upon learning the deception practiced upon him, he had a right to disregard the terms of his agreement with Albright, and treat the whole sum received as a payment on the debt at the date when he received it, and was equally free to bring an action upon the original note. It is only a valid contract for the extension of time, which restricts the creditor's right to sue, that discharges the surety. *Lemmon* v. *Whitman,* 75 Ind. 315.

Moreover, it is not found that the appellee had notice that the appellants were sureties, and, without such notice, his agreement to extend the time did not discharge the sureties. *Davenport* v. *King,* 63 Ind. 64; *Arms* v. *Beitman,* 73 Ind. 85.

The case of *Wilkins* v. *Reed,* 6 Greenl. 220, is much in point. It was an action of assumpsit against the makers of a promissory note, with the common money counts. The opinion of the court is as follows: "The note declared on is, in form, a joint one, and the case finds that it was never signed by Libby, or by his authority, and, therefore, the action is not maintainable on the first count; and the only question is, whether it is on either of the general counts upon the original cause of action. The note being negotiable, is said to have merged all implied promises, and that, therefore, the remedy of the plaintiffs exists only against Reed upon the note, on which he may sustain a several action against him. There is no doubt as to the principle relied on by the defendants, where the parties to the implied and the express promise are the same. Nor is there any doubt that, when a creditor of two persons knowingly and intentionally takes the security of one of them only, which security is valid in law, the other original debtor is considered as discharged. But, in the present case, there is no pretence for supposing that the plaintiffs ever intended to extin-

guish the liability of Libby.   The very form of the signature of the note proves the contrary.   Libby never could be sued on the original account, except by the present plaintiffs; and, in such an action, the verdict and judgment in this action would be pleadable in bar.   He can not, therefore, be endangered, as the note is void in respect to him.   Perfect justice has been done by the verdict, and both defendants are safe."

The same doctrine is declared in *Perrin* v. *Keene,* 19 Me. 355, which arose upon a note given for a partnership liability, executed after dissolution of the firm, by one member of the firm.   It is said: "This note, given without authority, does not extinguish the account.   If it did, it would be a new cause of action.   If not, then the account remains the same subsisting demand and may be brought in by way of amendment.   5 Pick. 303.   If the notes were given without authority, they were not a payment of the debt, and the account remains undischarged.   It may be said, that the note binds the agent or partner who made it, even if he undertakes to use the copartnership name without authority.   The answer is, it can bind him alone, and the plaintiffs did not intend to take the note of Weston alone.   They meant to have the security of the copartnership.   The note, then, being the note of Weston alone, the presumption of payment is rebutted."   See also 2 Daniels Neg. Inst. (2d ed.), sec. 1369.

The taking of the second note, and surrender of the first, even if there had been no fraud or mistake, did not operate as a payment or extinguishment of the original obligation, and, upon default in the payment of the latter, the plaintiff was remitted to his right of action on the former instrument. This is the well settled rule in this State, as well as elsewhere. *Tyner* v. *Stoops,* 11 Ind. 22; *Stevens* v. *Anderson,* 30 Ind. 391; *Maxwell* v. *Day,* 45 Ind. 509; *Alford* v. *Baker,* 53 Ind. 279; *Hill* v. *Sleeper,* 58 Ind. 221; *Bristol M. & M. Co.* v. *Probasco,* 64 Ind. 406; *Smith* v. *Bettger,* 68 Ind. 254.

These cases all recognize the doctrine as stated in *Muldon* v. *Whitlock,* 1 Cowen, 290, that "no principle of law is better

settled, than that taking a note. either from one of several joint debtors, or from a third person, for a pre-existing debt, is no payment, unless it be expressly agreed to be taken as payment, and at the risk of the creditor. Nor does the taking a note, and giving a receipt for so much cash, in full of the original debt, amount to evidence of such express agreement to take the note in payment. The agreement must be clearly and explicitly proved by the original debtor, or he will still be held liable." See, also, *Vancleef* v. *Therasson,* 3 Pick. 12.

Indeed, the general holding elsewhere is, that the acceptance by a creditor of negotiable paper, made or endorsed by his debtor on account of the claim, operates presumptively only as a conditional payment or temporary merger; and, if the paper is not honored at maturity, action may be brought on the original claim. See note 2 and cases cited in 2 Ames Cases on Notes and Bills, 571-2. And the rule everywhere must be that the acceptance of forged paper of whatever character, in ignorance that the names or any of them are not genuine, will not discharge the prior liability.

The proposition, that the plaintiff ought to have returned, or offered to return and surrender, the second note and the money received with it, is based on the mistaken idea that the rules applicable to the rescission of contracts apply to this transaction. The new note, if in all respects valid, amounted only to "a new, and perhaps better, form of evidence" of the pre-existing indebtedness—*Maxwell* v. *Day, supra;* and, according to some cases, if sued upon and put into judgment and execution, against Albright, but not satisfied, would not have extinguished the right of action on the surrendered note. *Davis* v. *Anable,* 2 Hill, 339; *Hawks* v. *Hinchcliff,* 17 Barb. 492; *Corn Exchange Ins. Co.* v. *Babcock,* 57 Barb. 231; *First National Bank* v. *Morgan,* 6 Hun, 346.

In *Alford* v. *Baker* it is said that the reason why the giving of a negotiable note operates as a payment is, "that the maker might be put to inconvenience, and perhaps obliged to pay the debt twice, as he can not set up a payment of his

original debt, after a seasonable endorsement of the note, against the claim of an innocent holder." In *Smith* v. *Bettger*, too, it is said: "When the debtor gives a promissory note not governed by the law merchant for an existing debt, he can not be subjected to the payment of the debt twice, for the payment of either the original debt or the note is a discharge of both; but, when the debtor gives a bill of exchange or a promissory note governed by the law merchant, * * * unless the negotiable paper was held to be a payment, we do not see why the creditor could not * * subject the debtor to the payment of his debt twice. The only way we see to avoid these consequences would be to compel the creditor at the time of trial, if he sued on the original debt, to produce, deliver up and cancel the negotiable paper received for the debt."

The plain inference here is, that there is no necessity for the surrender and cancellation of non-negotiable paper.

There is no more reason for it than in cases of suits upon such notes, in which affirmative defences only are pleaded. In such cases the production of the note for formal cancellation is never required. The record furnishes ample protection against any subsequent suit upon it, and the same may be said of the record, in this case, which describes and identifies both notes, and renders any misuse of the second one practically impossible.

In *Thurston* v. *Blanchard*, 22 Pick. 18, the following pertinent language is used: "The precise question then is this, whether the vendee's own note not negotiated, comes within the rule. Had it not been negotiable, we think it quite clear, that there would be no necessity of returning it. Rescinding the contract for the sale, rescinds the contract of payment by the vendee. A note not negotiable, would have been nothing more than an express promise to pay for the goods, and would have been avoided with the sale. The court are of opinion, that a note, though payable to order, whilst it remains in the hands of the promisee, the vendor of the goods, is to be put on the same footing, and that the delivering it up was not a

condition precedent to bringing the action. If not produced at the trial, to be surrendered, it might be presumed that it had been negotiated, and that would have been a bar to the action, upon the rule stated." This was said in an action of replevin, brought without previous demand, by the vendor against the vendee, for the recovery of the goods for which the note was given, and it was only because it was a commercial or negotiable note, that its production for cancellation was held necessary. For similar cases, see *Nichols* v. *Michael,* 23 N. Y. 264, and *Coghill* v. *Boring,* 15 Cal. 213.

It may be observed, that the appellee was not bound to accept as true the affirmation of the appellants that their names to the renewal note were not genuine. He had a right to entertain doubt on that subject, and to have the matter judicially determined. It was his unquestionable privilege, and perhaps the more prudent course for him to have followed, to have based his action upon both notes, leaving it to the defendants, by their answers, to determine for themselves by which obligation they would be held; and it certainly can not be that the position of the appellee is any the worse because he accepted the word of the appellants, and treated the second note as being the forgery, which they affirmed it to be. Nothing, in any aspect of the case, has been done to their injury. For the money paid by Albright, they had full credit, the portion of it which was usurious having been applied for their benefit. Albright alone executed the second note, and he alone, if anybody, might insist upon its surrender. He, however, makes no question, and the appellants clearly have no right to.

Judgment affirmed, with costs.