## MILMINE v. BASS and others.

*(Circuit Court, D. Indiana. December Term, 1886.)*

1. EXECUTION — LEVY ON REAL PROPERTY — ABANDONMENT — SECOND LEVY — RULE IN INDIANA.

   If, in Indiana, the owner of an execution releases and abandons a levy made upon real estate sufficient to satisfy a part only of the writ, and causes a levy and sale of other real estate, the sale will not be deemed void, but, being irregular, it may be set aside, if necessary, in order to do equity between parties concerned.

2. SAME — PAYMENTS NOT CREDITED — LEVY FOR FULL AMOUNT — GOOD-FAITH PURCHASER—NOTICE.

   If an execution be issued without proper notation of credits for payments upon the judgment, and land be levied upon and sold by virtue of such writ, to a purchaser without notice of the irregularity, the sale will not, on that account, be invalid.

3. SAME—EQUITIES OF JUNIOR LIEN-HOLDER—OTHER LANDS AVAILABLE.

   An execution creditor whose judgment is a lien upon different bodies of land is not bound, when making a levy, to inquire into the equities of junior lien-holders; and if, while other lands are first equitably liable to seizure, a levy be made upon a tract which is subject to a junior lien, and the holder of such lien neglects to assert his rights in court before the sale, he cannot afterwards have the same annulled.

4. SAME—REMEDY OF JUNIOR LIEN-HOLDER AFTER SALE.

   If the owner of lands subject to a judgment lien has mortgaged a part thereof to A., and afterwards has mortgaged or conveyed the remainder, worth more than the amount of the judgment, to B., and thereafter the land mortgaged to A. is levied on, and sold to satisfy the judgment, B. being the the purchaser, while A. may not have the sale annulled, he may, to the extent of his interest, require B. to account to him for the value of the mortgaged property so sold on execution.

5. PRINCIPAL AND SURETY — EXTENSION OF TIME — UNAUTHORIZED CONSENT — PARTNERSHIP.

   Where an agreement for an extension of time upon a judgment was made between the principal debtor and the creditor, acting on the faith of a written consent signed in the name of a firm which was liable as surety in the judgment, and it turned out that, excepting one, the members of the firm had not authorized, and were not bound by, this consent, the agreement for extension was not binding upon the creditor.

*(Syllabus by the Court.)*

In Equity.

On May 12, 1873, Stearns & Co. recovered a judgment in the state court against Gardner, Blish & Co., principals, and Bowser, Prentis, and Falls, as sureties, for $2,212.85. At that time Bowser owned real estate in Allen county, Indiana, worth from $20,000 to $30,000, on which there were liens amounting to about $6,000. On December 31, 1873, the principal debtors paid $354.93 on the judgment, and on January 1, 1874, the same parties paid $145.07. On May 1, 1874, the same parties paid interest on the judgment to that date. On June 20, 1876, the principal debtors paid the interest due and to become due on the judgment up to January 1, 1877. The interest so paid in advance, being at the rate of 10 per cent. per annum on the judgment, was paid upon the agreement that the day of payment should be extended to January 1, 1877. Before granting the extension, Stearns & Co. wrote to Bowser & Co., (a firm

composed of Bowser, Prentis, and Falls,) asking their approval. The letter was returned to Stearns & Co., indorsed: "FORT WAYNE, April 13, 1875. We agree to the within proposition as stated. J. C. BOWSER & Co.,"—in the handwriting of J. C. Bowser.

On June 12, 1877, execution was issued on the judgment, and levied on lots 116 and 117, old plat of the city of Fort Wayne. The execution was issued for $2,212.85, and costs and interest. There was then due on the judgment, according to defendant's computation, $1,971.06, and according to plaintiff's computation, the sum of $1,552.05. The property was advertised, and offered for sale, but the execution was returned on July 21, 1877, indorsed, "Not sold for want of bidders." On October 9, 1877, execution was issued, and returned October 25, 1877, "No property found to levy on." On November 26, 1877, a writ of *venditioni exponas* was issued, reciting former levy on lots 116 and 117, and ordering their sale. On December 22, 1877, the sheriff returned that he had advertised the property, but had made no sale for want of bidders. On July 5, 1878, a second *venditioni exponas* was issued, commanding the sale of the same lots. On July 6, 1878, this writ was returned indorsed as follows:

"This execution is returned unsatisfied. The within levy released. The clerk will please issue *alias* execution.

"*July* 6, 1878.

    [Signed]                 "C. A. MUNSON, Sh'ff,
                                  "By PLATT J. WISE, Deputy."

The action of the sheriff in returning this writ was upon the express orders of Stearns & Co., the judgment plaintiffs.

The *alias* execution was issued, and the lands in controversy levied on and sold to John H. Bass, defendant, on August 3, 1878, for $2,000, and, not being redeemed within the year, he now holds them by sheriff's deed. On the seventh of March, 1878, Bass became the owner of lots 116 and 117, by purchase at foreclosure sales and sheriff's deeds issued thereon, and by the purchase of outstanding tax titles, at a cost of $10,-209.34. He also, subsequent to the execution of the Milmine mortgage, became the owner of a large amount of property, conveyed to him by said Bowser and wife.

The plaintiff, Milmine, claims title to the lands in controversy under a decree of foreclosure in his favor, rendered by the superior court of Allen county on July 24, 1879, for $6,838, upon a note and mortgage executed by Jacob C. Bowser and wife, of date June 1, 1875, to one Smith, the assignor of the plaintiff. Bass was indorser and surety for the firm of Bowser & Co. to a large amount, and, to indemnify him, Bowser and Bowser & Co. had given him a mortgage on all Bowser's property, which mortgage was junior to Milmine's mortgage and Stearns' judgment.

The questions involved in the case, as stated by the master, to whom it was referred, are: (1) Did not the levy on lots 116 and 117 render void the subsequent levy of the execution issued on the same judgment upon the lands in controversy? (2) Was not the levy of the Stearns execution upon the land in controversy void as to all parties with notice,

made, as it was, in violation of the clear equities of the plaintiff, while other lands of ample value to make the execution were liable to the judgment lien? (3) Did not the extension of time by the original judgment creditors discharge the land in controversy from the judgment lien? (4) Did not the issuing of the execution upon which the land was sold for a larger amount than was due thereon, with the intent to collect this excess, render the execution and sale to Bass thereon void?

The master found that lots 116 and 117, which were first levied on under the Stearns judgment, were of sufficient value to satisfy a considerable portion of that judgment; that, under the decisions of the supreme court of Indiana, a levy on real property, sufficient to pay the execution, or a substantial part of it, operates as a satisfaction until such levy is legally disposed of by sale of the property, or in some other legal manner, which has become a rule of property in Indiana; that, in this case, the federal courts are bound by the decisions of the Indiana supreme court, notwithstanding the fact that federal decisions are to the contrary. Hence the release of the levy on lots 116 and 117, and the subsequent levy on the lands in controversy and the sale to Bass, were irregular and void. He also finds that said release of the levy on lots 116 and 117, and the levy on the lands covered by the Milmine mortgage, was with the knowledge and by the agency of Bass; that the extension of time by the plaintiffs to the principal defendants in the Stearns judgment was with the consent of J. C. Bowser, but without the consent of Prentis and Falls; and that Bass, not being made a party to the Milmine foreclosure suit, is not bound by the decree therein.

Questions raised on exception to the report by Bass.

*L. M. Ninde* and *T. E. Ellison*, for complainant.

*R. S. Taylor* and *R. C. Bell*, for defendant Bass.

Woods, J. I do not agree with the master that, under the Indiana decisions, the levy of the Stearns execution upon the property in question was *void*, though it was irregular, because of the previous levy upon other real estate. It is quite clear that the property first levied upon, considering the incumbrances upon it, and the wife's contingent interest, was not sufficient to satisfy more than a small part of the sum due upon the writ; and, this being so, the decision in *Lindley* v. *Kelley*, 42 Ind. 294, is direct authority that the second levy, and the sale under it, is not to be held void merely because of the first levy, which had been abandoned by the owner of the execution. It was doubtless an irregularity to take a new execution, as was done in this case, and such an irregularity as may justify an interference by the court in order to do equity between the parties, if it is apparent that substantial rights have been violated by the sale. But, the property first levied upon having been insufficient in value, that levy did not, in my judgment, operate, under the Indiana decisions, to satisfy the judgment in the full sense; and if, on account of the irregular issue of the second execution, the sale made under it should be set aside, it would result that the judgment, notwithstanding the first levy, must be considered as having been in force all the

time, and, by virtue of it, Bass, being subrogated to the rights of Stearns & Co., who were not made parties to the complainant's foreclosure suit, would be entitled to redeem from the sale made to the complainant upon his decree.

Upon the second point, it is quite clear that the complainant might have compelled the sale of the other property of Bowser to satisfy the Stearns execution, before resort to the property covered by their mortgage; but, the complainant not having gone to the courts for this relief, the execution plaintiff was not bound to inquire into the equities in this respect, and to direct the order of sale accordingly; and it follows that the sale is not void, nor to be annulled, on this account, at the instance of complainant. *Sansberry* v. *Lord*, 82 Ind. 521; *Wiggin* v. *Suffolk*, 18 Pick. 145; S. C. 29 Amer. Dec. 576; *James* v. *Hubbard*, 1 Paige, 228; *Clowes* v. *Dickenson*, 5 Johns. Ch. 235; S. C. (on appeal) 9 Cow. 403; *Wise* v. *Shepherd*, 13 Ill. 41.

Nevertheless the complainant, as some of the cases just cited show, is not without remedy; but from the defendant, who obtained an inequitable advantage by means of the sale as made, is entitled to compensation to the extent of that advantage, that is to say, to the extent of the value of the property so sold, not exceeding the amount due complainant upon his mortgage debt. The report of the master is perhaps not explicit on the point, but, as I understand, it is not questioned that the property of Bowser, which was purchased by Bass, and which ought to have been sold on the Stearns' execution before resort to the lands mortgaged to the complainant, was worth, over and above all incumbrances created before the execution of complainant's mortgage, more than the amount due upon that mortgage, treated as a subsisting security; and, this being so, the decree here ought to be that the defendant pay to the plaintiff, within a time stated, the amount due upon their mortgage, with stipulated interest to date of payment, and that, in default of this, the sale to the defendant be annulled, and the title of the complainant under his purchase be confirmed.

The rights of the parties are not affected, in my opinion, by the extension of time granted upon payment of interest in advance upon the Stearns judgment. The extension was granted upon the supposed consent of Bowser & Co., and, if Bowser's partners were not bound by that consent, the agreement to extend was not binding on the creditor, and execution might have issued at any time, the interest paid in advance being returned or treated as a payment upon the judgment. *Albright* v. *Griffin*, 78 Ind. 182.

The sale was not invalid because the proper credits for payments were not noted on the execution, Bass, the purchaser, having no knowledge of the facts. The purchaser at an execution sale is not bound to have examined the dockets to see if the clerk has done his duty in this respect. The presumption is that the officer has done his duty in such particulars. *Fowler* v. *Griffin*, 83 Ind. 297.

In so far as the master's report is inconsistent with the foregoing, the exceptions thereto are sustained, and in other respects overruled.