STATE EX REL. E. P. WILMOT ET AL. V. HUGH BUCKLEY ET AL.

1. SPECIAL OR LOCAL LAW DEFINED.

    A law which applies only to an individual, or to a number of individuals selected out of a class to which they belong, is a special or local law.

2. GENERAL LAW DEFINED.

    A general law is one which relates to or binds all within the jurisdiction of the law making power, limited as that power may be by its territorial operation or by constitutional restraint, a law is not general in any correct sense of the term, but is special, where it is suspended in one locality, where exists a

proper subject-matter on which to operate, but is in full force in another locality of exactly the same kind.

3. ALL LAWS PERTAINING TO ELECTIONS MUST BE OF A GENERAL NATURE.

The subject of elections is one of general interest throughout the state, and all laws pertaining to the same must be of a general nature having uniform operation throughout the state.

4. SECTION 2926b, AS AMENDED, 92 O. L., 166, IS UNCONSTITUTIONAL.

Section 2926b, as amended in 1896, (92 O. L., 166), and which provides that, "In all such cities of the first and second class, except Mansfield and cities of the fourth grade in the first class, a 'board of election,' to consist of four electors of such city," etc., is local in its operation and its application, not having a uniform operation, but does by its terms exclude two cities of the state from its operation, and, therefore, it is unconstitutional and affords the members constituting the "board of election" of the city of Cleveland, no warrant of law for usurping the office that they hold.

5. SECTION 2926b, AS AMENDED; BEING DECLARED UNCONSTITUTIONAL, LEAVES THE ACT OF 1890 (87 O. L., 359), AS THE LAW GOVERNING ELECTIONS.

It is not reasonable to conclude that the state legislature meant to repeal all laws regulating elections in this state, and this being true there was no intent to repeal the law of 1890, (87 O. L., 359), by the law of 1896, (92 O. L., 166), for any other purpose than to give effect and operation to the latter law, and the law of 1896 being unconstitutional, the legislature must have intended that if that act should prove to be unconstitutional, then the law of 1890 should remain in full force and effect; this intent existed, and the purpose of putting in the repealing clause being as above stated, it follows that the repealing clause falls within the law itself, and the act of 1890 remains and has remained up to this time as the law governing elections.

6. STATUS OF "BOARD OF ELECTION" CREATED UNDER THE LAW OF 1896, (92 O. L., 166)..

. The members constituting the "board of election" of the city of Cleveland under the law of 1896, (92 O. L., 166), cannot be ousted from their office, notwithstanding that the law of 1896, is declared unconstitutional, unless the law of 1890, (87 O. L., 359), is also unconstitutional; and, if the court after a careful examination of that law hold that it is unconstitutional, and, so far as the above board are performing the duties of the board pertaining to the city of Cleveland, constitutes warrant of law for such acts; but such board have no warrant of law for usurping any authority over the election precincts of the county lying and being outside of the city.

7. APPLICATION OF THE STATUTE OF LIMITATIONS.

In a proceeding to oust the members of a "board of election" created under the law of 1896, there was until that time no unlawful usurpation of such office, and that unlawful usurpation arose from the passage of the law of 1896, and the laws extending the authority of the law over the entire county. These laws were passed at such a time that the cause of action set up in the petition in which it is sought to oust these members arose within the three years preceding the filing of the petition, and this being true, the statute of limitations has no place in the case as a defense to the proceeding, and, therefore, a demurrer filed against such a defense will be sustained.

CALDWELL, J.

Theodore L. Strimple, Prosecuting Attorney of Cuyahoga county, Ohio, files the petition in this action on the relation of E. P. Wilmot and George P. Kurtz against Hugh Buckley, Charles P. Salen, Edmund Etzensperger, and Edward C. Kensey, the four defendants named, in which he avers that the relators reside in Cuyahoga county, and are electors in said county. That the defendants under the claim that they constitute the board of elections of the city of Cleveland, are usurping and intruding into the office of appointing registers of elections, and points out specifically by items that they are undertaking to do and perform all the duties of the law pointed out therein for a board of elections to do and perform,

under this said claim that they constitute the said board of elections of the city of Cleveland of performing and exercising throughout the county of Cuyahoga the duties and powers vested by law in the deputy state supervisors in and for said county. This they are assuming to do without legal right, in this, that there is no authority in law for said doings and assumptions, and prays that they be ousted and altogether excluded from said office.

To this petition the defendants file a joint answer in which they show to the court by what warrant they claim that they lawfully constitute the board of elections of the city of Cleveland, and by what authority they exercise and do the things complained of in the petition.

The answer by way of first defense sets out who composed the board of elections on March 31, 1891, and then names all the persons who have since held positions on that board, giving the time when each one was appointed and by what officer appointed, and it appears that the defendants and all persons appointed since March 31, 1891, were appointed by the mayor of said city, pursuant to and by virtue of an act of the general assembly of the state of Ohio entitled "An act to amend section 2926b of the Revised Statutes as amended April 13, 1889, passed April 26, 1890, and found in 87 Ohio Laws, 359, and subsequent amendments thereof."

The defense shows to the court all the amendments and supplementary sections of the law down to the time of the appointment of the defendants, and avers the qualifications of each of them for the place as prescribed by law and the necessary facts to show the mode and manner of appointment complied with the law. That no memeber of the board since his appointment has done anything to disqualify him to hold his place as pointed out in the law. That the board is legally organized. This defense avers that since the creation of such a board the state has repeatedly recognized the legality of said board by passing laws pertaining to the same and prescribing the duties of the same. Wherefore it is claimed that said board of elections is a valid and constitutional board, and at the time of the commencement of this action these defendants were, and now are, rightfully and lawfully members of and together constitute, the said board, with the right to hold and enjoy their said offices, and with full authority to exercise all the powers and perform all the duties, thereunto belonging.

The second defense of the answer re-affirms the facts of the first defense. Then avers that the defendants and their predecessors in office have at all times since April, 1891, constituted the said board of elections, and have at all times performed all the duties of the law, and that the right of action set up in the petition did not accrue within three years next before the commencement of this action, and then pleads the three years statute of limitation.

The third defense in the answer sets forth the existence of certain factions in the Republican party; the choice of two committees, one by each faction; and that this action is commenced and prosecuted in the interest of one faction, and hence the court is asked to refuse any affirmative relief to the plaintiffs against the defendants.

To each and all of these defenses a demurrer is filed by the plaintiff. The ground of the demurrer to the first cause of action is, that the statute under which the defendants were appointed on the board, is unconstitutional.

The second defense is demurred to because it is claimed this defense shows that this action was commenced within three years from the time that each and all of the defendants were appointed on the board.

There is a demurrer to the third defense, but it is admitted that this is not a good defense as to the demurrer, but may, in connection with the other defenses, serve the purpose of the pleader upon trial or in case the plaintiff should ask to amend the petition.

Is the law under which the defendants were appointed, unconstitutional ?

Section 2926b, as amended in 1896, 92 O. L., 166, is the one under which the appointment was made. That law provides that "In all such cities"—that means all cities—"of the first and second class, except Mansfield and cities of the fourth grade in the first class, a 'board of election' to consist of four electors of such city;" shall be appointed by the mayor, and then the law goes on and provides for their appointment and their duties, as amended in 1896, 92 O. L., under which an appointment was made.

It is claimed that all laws pertaining to elections must be general laws, and that this is not a general law in that it excepts from the provisions of the law Mansfield by name, and Canton in another way equally offensive to the nature of the subject. Article II, sec. 26, of the Constitution of Ohio, provides that "All laws of a general nature shall have uniform operation throughout the state."

Has the section in question uniform operation throughout the state ?

Under this constitutional provision, a law which applies only to an individual, or to a number of individuals selected out of a class to which they belong, is a special or local law. A general law is one which relates to or binds all within the jurisdiction of the law-making power, limited as that power may he by its territorial operation or by constitutional restraint.

A law is not general in any correct sense of the term, but is special, where it is suspended in one locality, where exists a proper subject-matter on which to operate, but is in full force in another locality of exactly the same kind. This uniformity is in the sense, that the law shall operate the same in all parts of the state under the same circumstances and conditions, such law must embrace all and exclude none whose condition and wants render such legislation equally necessary or appropriate to them as a class. There are reasons why a city needs election regulations that would be useless in country districts. The population in a city is not so stable, the people are more frequently moving. There are many who are without any home or abiding-place for any length of time. There are more who are ready at any time to do acts on slight provocation to subvert fair elections. These are reasons sufficient to make it proper and constitutional to have election laws that apply to cities as a class, that do not apply to country districts. So far as this classification is made in the Laws of Ohio, they are constitutional. But this distinctive feature existing between cities and rural districts does not exist in cities as between themselves in any such marked degree as would make it a foundation for different legislation upon this subject as to them, and if these laws are laws of a general nature, any distinction made in them between cities is unconstitutional. Section 2926b Rev. Stat., clearly makes this distinction in that it excludes two cities from the general class of all cities, and is, therefore, unconstitutional. Kelly v. State of Ohio, 6 O. S., 270; Haskell v. Burlington, 30 Iowa, 232; State v. Wilcox, 45 Mo., 458.

Nor is it possible to exclude from the law the objectionable feature above referred to, for, in whatever form it may stand after .such exclusion, it is still a law applying to only a part of the cities of the state.    It is, therefore, impossible to drop from the section before' referred to, any portion of it and still retain any part that is constitutional.

Is sec. 2926b Rev. Stat., special, and are all laws in the state, relating to elections, special laws ?    This section, among others, provides for the orderly exercise of the constitutional right to vote.    While the right to vote, it is claimed, is of a general nature and must have a uniform operation throughout the state, yet the laws merely regulating the exercise of the right, it is contended, are not of a general nature and hence may be adapted to the varying needs of different localities.

The subject of a fair election is one that interests all the people of the state.    The people of one county are no more interested in the proper conduct of the elections in their county than are the people of an adjoining county, and any unfairness in the election affects every county in the state and every locality in the state.    I refer in this, to the election of state officers.    The constitutional right of suffrage is common to all who come within the constitutional class, and the opportunity to exercise this right must be, by statutory law, brought reasonably within the reach of all who have the right; and every citizen in the state is interested in who shall be permitted to exercise this right.

It has been held in this state, that a law fixing the salary of county officers in any one county is not a subject of a general nature; it is not a law concerning any one except the person residing in the county; the officers are elected purely within the county, and the salaries are paid entirely by taxation confined to the county, and, hence, how much they shall receive is a matter that is not of interest to any other part of the state.

It has been held that a law, requiring fire escapes to be placed on buildings of a certain height, is a law of a general nature, because there is no sufficient ground on which to distinguish the necessity of such fire escapes in large cities from the necessity existing in smaller places.    The same danger substantially that exists in one locality exists in another. There being no ground upon which any proper distinction can be made, and the subject being one of general interest throughout the state, no local law can be constitutional that provides for fire escapes in one locality of the state to the exclusion of others.

Aside from the distinction existing as shown before between cities and rural districts, there is no sufficient ground as to locality in which the law shall operate to make any classification of the laws of elections. As to the interests that all persons have in such laws, it is the same in every part of the state.    These facts existing, determine the question as to whether these laws are of a general nature or are local, and that they are of a general nature we think is clear.

This question has been twice noticed by the Supreme Court of this state.    In Munroe et al. v. Collins, 17 O. S., 665, in the second paragraph of the syllabus is this language:  "Laws passed professedly to regulate its exercise or prevent its abuse, must be reasonable, uniform and impartial."    By examining the briefs of counsel in the case, it is seen that the very question before us, was presented to the court in that case; and while there has been some doubt as to whether the court did or did not in the opinion determine that by the word "uniform"used in the syllabus, it had reference to the question now under consideration, and meant to determine that all laws pertaining to elections should have a uniform

operation and should ·be general laws, yet there is·much in what is said in the opinion, to lead to the conclusion that the court meant to so say; and it is difficult to read the· opinion of the court in that case without believing that the court meant to show that all laws pertaining to elections, must be general laws and have a uniform operation. This case is commented upon by Judge Shauck in State ex rel. Plimmer v. Posten, 59 O. S., 122. Judge Shauck uses this language: ·"It ·does not seem to be doubted that the provision in question operates uniformly and impartially on all political parties and sections of ·voters. Whatever discrimination it makes is on account of the numbers solely." ·

From these two opinions, it is probably doing no· injustice to the Supreme Court to say that that court has held that the subject of elections is one of general interest throughout the state, and that all laws pertaining to the same must be of a general nature having ·uniform operation throughout the state. State v. Butts, 31 Kas., 537, 550; the opinion commencing on page 550. The opinion is by Judge Brewer who at that time was on the Supreme Bench in the ·state of Kansas, and is now one of the ·Justices of the United States Supreme Court. The question for determination ·before him was, whether a ·law that pertained to certain cities of the state was a constitutional law and as having a uniform operation throughout the state; and that was the question which he determined, and he determined that cities might be classified under the constitution, and that any law that pertained to all the members of a class, made where a proper distinction exists from making classes, is a general law and of uniform operation, and that the law under consideration was of that nature. Had Judge Brewer believed that it made no difference whether the law was a general law or local law or that a local law was proper, he could have much more easily pronounced his opinion by saying· that "under the constitution, considering the subject of elections, it makes no difference whether the law is general or local."

We, therefore, hold that the section in question is local in its operation and its application, not having a uniform operation, but does by its terms exclude two cities of the state from its operation, and, therefore, it is unconstitutional and affords· the defendants no warrant of law for usurping the office they hold.

It is contended, however, that, if this law is unconstitutional and void, it can have no effect whatever, and that the clause attached to it, by which the same section in the law of 1890 was repealed, can have no effect and that the section in the law of 1890 is in full force and effect and affords sufficient warrant of law for the holding of the office.

The question presented by this claim of counsel is, as to whether when a law is declared unconstitutional, the clause therein repealing a former law falls with the unconstitutional part of the law or remains good, leaving all acts and things done under the unconstitutional law without any support from the law that was repealed.

There is no doubt that an act may be constitutional in part, and part void. If the unconstitutional parts are essential to the constitutional, all must fail, and if the parts are so mutually related as to make it evident that the legislature intended then to constitute one, so that if all could not be carried into effect, none would have received the legislative sanction, the case is within the same rule; but this rule ·must be taken with the limitation that the parts so held respectively constitutional and unconstitutional must be wholly independent of each other so that the one intent may exist as to one, and a separate intent as to the other.

State v. Buckley et al.

The election laws, as found upon our statute books, have been passed by reason of the necessity that existed in our state. That necessity was to secure fair elections. The same necessity has been found to exist in nearly every state of the Union. It is, therefore, not reasonable to conclude that the state legislature meant to repeal all laws upon this subject, and leave the state entirely without law regulating elections in the state. This being true there was no intent to repeal the law of 1890 by the law of 1896, for any other purpose than to give effect and operation to the latter law. This being true, and the law of 1896 being unconstitutional, the legislature must have intended that if that act should prove to be unconstitutional, then the law of 1890 should remain in full force and effect. This intent existed, and the purpose of putting in the repealing clause being as above stated, it follows that the repealing clause falls within the law itself, and the act of 1890 remains and has remanied up to this time as the law governing elections. This is not without authority. Bishop on Written Law, sec. 34; Southerland on Statutory Construction, sec. 175; State v. Keyser, 14 Nevada, 202; Sullivan v. Adams, 3 Gray, 476; State v. Bland, 121 Indiana 514; In re. Rafferty 1 Wash., (State of Washington) 389; Tims v. State, 26 Ala., 165; Childs v. Shower, 18 Iowa, 261; In re Petty, 22 Kansas, 489; People v. Flemming, 7 Col., 230; Randolph v. Builders & Painters Supply Co., 106 Ala., 501.

This latter case is authority to the point that where acts are done under and with special reference to the unconstitutional law, those acts may be justified and enforced under the previous law repealed by the unconstitutional law.

The defendants can not, therefore, be ousted from their office notwithstanding the law of 1896 is unconstitutional unless the law of 1890 is also unconstitutional. We have examined this law carefully and the authorities bearing upon the different phases of the law. And we hold that that law is constitutional, and, so far as the board of elections are performing the duties of the board pertaining to the city of Cleveland, constitutes warrant of law for such acts.

In 1889, (86 O. L., 258,)sec. 2926 and supplementary sections, the authority of the board of elections in a county having within its territory a city of the first grade and first class, was extended to and over all elections held in the county, and providing that the secretary and clerk should be electors of the county and not of the city merely. This act applied to Hamilton county alone, it being the only county that had a city of the first grade and first class.

In 1891, (88 O. L., 468,) a law was enacted on April 30, 1891, providing that in any county having within its territory a city of the first class, the board of elections heretofore established in such city shall be the county board of elections, and all the privileges, duties and penalties of sec. 2926b, Rev. Stat., and the supplementary sections shall apply to all elections in such counties. And in 1892, (89 O. L., 429,) the act was again amended; and section one provides that in any county having within its territory a city of the first class, the election precincts of the county, not included within the city, should be held and deemed to be election precincts of the city for the purpose of conducting elections therein, and the board of elections heretofore established in such city, shall have direction of elections in such precincts and throughout such county, and that all the provisions of section 2926b and supplementary sections shall apply. This section is marked 2926w-1 of the Revised Statutes.

In 1898, (93 O. L., 361, sec. 1,) provides that in any county having within its territory, a city of the first class and first grade of the second class, except counties containing cities of the first class and fourth grade, the election precincts of the county, not included within the city, shall be held and deemed to be election precincts of the city for the purpose of conducting and supervising elections therein, and the board of elections heretofore established in such cities have direction of elections.

There are features of this last statute that fall clearly within what I have already said in regard to sec. 2926b, Rev. Stat., and I will not repeat them.

These laws constitute the authority of the board of elections of the city of Cleveland for extending its authority over the elections of the county outside of the city. These laws are called in question as to their constitutionality, and they may be considered together or if one of them is unconstitutional they are all unconstitutional; and if there is no authority in one, there can be no authority in any of them. These laws undertake to make and do make a distinction between the rural parts of a county containing a city of the class named in the law, and the rural parts of a county not containing such a city. Any reason for this distinction in the law is not easily comprehended. We know none nor can think of any reason why one county should be or can be distinguished from another, under the election laws.

It is clear from the decisions of the Supreme Court of the state that the classification allowed by the laws of the state as to municipalities, can not be extended to counties; and, upon a law of a general nature, whatever distinction may exist as to the counties, the court will not sanction any classification of them in such a law making the parts of such counties outside of the cities named; or, to be more specific, making that part of Cuyahoga county lying outside of the city of Cleveland a part of the city so far as elections are concerned, is making a classification such part of Cuyahoga county different from the law applied to other counties in the state, and this is done without any grounds for such distinction and without any authority of law of distinguishing counties under a general law or excepting any county from the operation of a general law. This being true, it follows that the board of elections in this county have no warrant of law for usurping any authority over the election precincts of the county lying and being outside of the city.

If a final judgment is entered on this hearing, a decree may be taken in this case ousting the board of elections from such office so far as the precincts outside of the city are concerned.

The second defense is the three years statute of limitations. It is not important in the view we have taken of the law, that we should say anything upon this subject. I will merely say this: That it is clear no cause of action arose until the passage of the law of 1896. There was until that time no unlawful usurpation of the office; and that unlawful usurpation arose from the passage of the law of 1896 and the laws extending the authority of the law over the entire county.

These laws were passed at such a time that the cause of action set up in the petition in this case, arose within the three years preceding the filing of the petition. This being true, the statute of limitations has no place in this case.

An effort is made in pleading this defense in the answer to show that this statute of limitations must be held to apply to the board as such and not to the individuals thereof. The action is brought against the individ-

State v. Buckley et al.

uals alone and not the board, and properly so.   The defendants as individuals file a joint answer, and not as a board.   This being true the statute of limitations, so far as it can apply to this action at all, can apply only to the times of appointing the individual member of the board.

In State ex rel. v. Board of Education, et al., 3 Ohio Circ. Dec., 703, the Butler circuit court held that where the petition makes a cause of action against a board of education and likewise against the directors composing that board, and the judgment is asked against each, that it is a misjoinder, there being two causes of action distinct and separate, and they must be so stated and so dealt with.

If that is true and this is a cause of action against these members of the board of elections, it can not by the answer be taken into a cause of action against the board itself.

The demurrer to the second cause of action is sustained.

What I have said as to the judgment to be entered herein, has been said upon the supposition that the defendants will not desire to answer over.   Judgment will be made accordingly.

The demurrer as to the second defense, the statute of limitations, will be sustained.

MARVIN, J.

I have not felt so persuaded that the statute, sec. 2926b, as amended in 1896, is a law of a general nature, which must have a uniform operation throughout the state, such as to fully justify myself in saying that it is unconstitutional.   I do not care to take up time.   It is quite likely my brethern may be right.

CALDWELL, J.

I have made the following entry in the case of the State ex rel. Wilmot and Kurtz:

"December 23, 1898.   Demurrers to the second and third defenses in the answer sustained, and the demurrer to the first defense in the answer is over-ruled; and the plaintiff excepts to the over-ruling of the demurrer to the first defense; and the defendant excepts to the sustaining of the demurrers to the second and third defenses in the answer."

PHILLIPS, GEO.

There is one feature of the case that I want to conside briefly.   I may desire leave to be heard, but I will not desire anything that will delay a final decision of the case.

*C. E. Pennewell* and *F. J. Wing*, for plaintiff.

*M. G. Morton* and *Geo. Philips*, for defendant.